## El Pueblo *v.* Dessús et al.

Apelación procedente de la Corte de Distrito de Arecibo.

No. 39.—Resuelto en mayo 29, 1907.

Delito Contra la Paz Pública—Motín—Jurisdicción.—La circulación de un periódico dentro del distrito judicial es suficiente para dar jurisdicción á la corte sobre la persona de aquéllos que se consideren responsables por la publicación en el mismo, de un editorial constitutivo de una infracción del artículo 359 del Código Penal, y la circunstancia de que tal periódico se imprimiera en lugar situado fuera del distrito judicial, ó que estuvieren pendientes en otra corte procedimientos de *habeas corpus* en relación con el mismo asunto, no es suficiente para privar de su jurisdicción á la corte ante la que se hubiere denunciado el hecho criminal.

Id.—Aconsejar ó Ayudar á Otro en la Comisión de un Delito.—Las palabras "*toda persona que aconsejare ó ayudare á otro en la comisión de dicho acto, incurrirá en misdemeanor,*" contenidas en el artículo 47 del Código Penal, no pueden tener otra interpretación que la de que *toda persona que aconsejare á otra á que cometa dicho acto ó le preste ayuda en la comisión del mismo*

incurre en *misdemeanor;* cualquiera otra interpretación, y especialmente la de agregar las palabras "*en la comisión*" después de la palabra "*aconsejare*," sería forzada, pues el consejo se da *para que se cometa* el hecho, mientras que la ayuda se presta *durante su comisión.*

Acusación—Su Suficiencia.—Si una acusación se ajusta á los requisitos que prescribe el artículo 82 del Código de Enjuiciamiento Criminal, dicha acusación es suficiente.

Participatión en la Comisión de un Delito Felony ó Misdemeanor.—El aconsejar, pedir ó inducir á una persona á que cometa un delito, ya sea un *felony* ó un *misdemeanor,* constituye por sí solo un delito distinto, completo é independiente de aquél, cuya comisión se aconseja, siendo completamente inmaterial el que tal consejo haya sido eficaz ó ineficaz, y resultara ó no, en la comisión del delito aconsejado.

Id.—Motin—Asesinato—Publicación de Artículos Tendentes á Aconsejar su Comisión.—La publicación de un artículo aconsejando, solicitando ó induciendo al público en general, y especialmente á determinadas personas, á que se reunan y formen un motín, que es un *misdemeanor,* ó cometan asesinato, que es un *felony,* constituye un delito, sin que pueda afectarle en modo alguno, la circunstancia de que tal consejo haya sido seguido ó no, ó que las personas á quienes iba dirigido hubieran leído, ó no, el artículo en que aquél se contenía; la sola publicación del artículo constituye delito, sin que sea necesario que se ejecute hecho alguno como consecuencia de tal publicación.

Pruebas Contradictorias—Apreciación.—El Tribunal Supremo debe aceptar la apreciación hecha por el jurado ó la corte inferior en casos de pruebas contradictorias, á no ser que se demuestre que al hacerla actuaran movidos por pasión, prejuicio ó parcialidad, ó que incurrieran en manifiesto error.

Apelación—Errores de Procedimiento que no Perjudiquen los Derechos del Acusado.—El tribunal de apelación no revocará una sentencia condenatoria por meros errores de procedimiento que no hubieren perjudicado los derechos substanciales del acusado.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Manuel F. Rossy.*

Abogado del apelado: *Sr. Rossy, Fiscal.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

Los apelantes en el presente caso, Luis Felipe Dessús y Carlos García Gaona, fueron acusados, juzgados y declarados culpables en la Corte de Distrito de Arecibo, del delito de aconsejar un motín, mediante la publicación en la ciudad de San Juan en un periódico llamado *El Rumor Diario,* de un artículo, bajo el rubro "Cabeza por Cabeza" "Vida por Vida," cuyo delito está previsto en los artículos 47 y 359 del Código Penal.

Aunque se interpuso inmediatamente recurso de apelación contra la sentencia condenatoria, los demandados no han prestado mayor, atención á los puntos principales del asunto, en este tribnual, y se han visto obligos los jueces á investigarlo casi sin la ayuda de los abogados. Fué sometido el caso con informe oral el día 22 de diciembre último pasado, y ha recibido como de costumbre la cuidadosa atención de todos los jueces de esta corte.

La primera cuestión que nos ocupa es, por supuesto, respecto á la jurisdicción de la Corte de Distrito de Arecibo, en donde se originó el proceso y en donde se celebró el juicio, declarándose culpables á los acusados y contra cuya sentencia se ha interpuesto el presente recurso de apelación.

Es claro que la corte de distrito era competente para conocer del presente asunto, y no aparece en el récord nada al contrario. Indudablemente que ni podría privar á la corte de su jurisdicción el hecho de que se hallaba pendiente en esta corte un procedimiento de *habeas corpus* después de comenzado el proceso, ni podría el hecho de que el artículo fué impreso en San Juan, fuera del distrito de Arecibo, impedir que dicha corte asumiera jurisdicción del caso en primer lugar. La publicación fué verificada en aquellos sitios en que tuvo circulación el periódico, y el consejo constitutivo del delito también fué dado en los mismos. Estos dos extremos son tan sumamente claros que no admiten ulterior argumentación ó discusión.

Véamos cuál es la naturaleza de la acusación según fué presentada en la Corte de Distrito de Arecibo. A la letra dice así:

"Angel Acosta Quintero, Fiscal de la Corte de Distrito del Distrito Judicial de Arecibo, respetuosamente y previo juramento que exige la ley, ante V. H. expone:

"Que denuncia criminalmente á los individuos Luis Felipe Dessús y C. García Ganoa, vecinos de la ciudad de San Juan, Puerto

Rico, por el delito de aconsejar la comisión de un motín, cometido en la siguiente forma:

"El citado Luis Felipe Dessús y C. García Gaona, vecinos de la ciudad de San Juan, P. R., que son los redactores y directores del periódico "El Rumor Diario" que se edita en San Juan, y en su número 605 correspondiente al día 24 de mayo de 1906, que se acompaña y hace parte de esta denuncia, publican un artículo, bajo el rubro "Cabeza por Cabeza" "Vida por Vida" y que ha circulado en esta ciudad, con anterioridad al domingo 27 del actual, mes y año en el que tuvieron lugar los sucesos de Hato Viejo que causaron las heridas graves del policía insular Ramon T. Quijano, y muerte del paisano Juan Rosado, y en que se dice "De nada valen las denuncias ante los tribunales, ni las protestas de la pluma, ni de la palabra" y aconseja "la agresión" é incita á los obreros á "sublevarse" y manifestándose que se tendría "gusto para cojer nuestra pluma y comentar un choque sangriento entre la policía y los obreros"; frases y todo el contexto de dicho artículo, tendentes á consejar y promover en esta ciudad y término de Arecibo, y con motivo de la huelga de braceros de las haciendas de cañas, un motín. Este delito está previsto en el artículo 359 en relación con el 47 del vigente Código Penal, toda vez que se aconseja el empleo de fuerza y violencia.""

El artículo del periódico que forma la base de este proceso dice sustancialmente lo siguiente:

"Cabeza por Cabeza" "Vida por Vida." Ayer publicamos un telegrama que nos envió el Sr. Padilla, de Arecibo, sobre los compontes que da la policía á los obreros huelguistas de aquel departamento. Ya lo hemos dicho. Mientras los obreros no se defiendan con la fuerza, los abusos no terminarán. Hay que cobrar cabeza por cabeza, vida por vida. Dispóngase una docena de hombres á caer, y empezará una nueva era de regeneración moral para el proletario. De nada valen las denuncias ante los tribunales, ni las protestas de la pluma y la palabra. La agresión frente á la agresión. A un rotenazo de la policía, contestad con un estacazo: á un tiro con otro tiro. Y si no hay estacas ni armas de fuego, siempre hay una piedra al alcance de la mano. Tendríamos entonces gusto para coger nuestra pluma y comentar un choque sangriento entre la policía y los obreros. Los abusos terminarán cuando no haya miedo para responder al golpe con el golpe: si no hay valor para sostener una situación de rebeldía, entonces más vale no provocar el movimiento. Es

triste eso de doblar cobardemente el cuello á la espada de la plebe
que nos gobierna. ¡Sublevarse, obreros atropellados, que así cederá el
déspota que ordena el asesinato y sostiene la anarquía! ¡Sublevarse,
sublevarse!''

Las leyes á que se hace referencia en la acusación son los
artículos 47 y 359 del Código Penal de Puerto Rico, que á la
letra dicen lo siguiente:

"Sección 47.—Si declarado "misdemeanor" determinado acto,
no hubiere pena expresamente señalada en la ley por aconsejar ó
ayudar á su comisión, toda persona que aconsejare ó ayudare á otra
en la comisión de dicho acto, incurrirá en *misdemeanor*.''

"Sección 359.—Todo empleo de fuerza ó violencia que perturbare
la tranquilidad pública, ó amenace de emplear tal fuerza ó violencia,
acompañada de la aptitud para realizarla en el acto, por parte de
dos ó más individuos, obrando juntos y sin autoridad de ley, consti-
tuye un motín.''

Se sostiene á favor de los acusados que de acuerdo con los
precedentes artículos del Código, no puede confirmarse una
declaración de culpabilidad á no ser que siga un motín como
consecuencia directa del consejo dado en el artículo publicado
por los acusados en su periódico y al cual se hace referencia en
la acusación que se presentó en contra de los mismos.

Debemos considerar primero, la interpretación que dan
los acusados á ciertas palabras de la sección 47 del Código
Penal, que dice lo siguiente: "Toda persona que aconsejare ó
ayudare á otra en la comisión de dicho acto, incurrirá en
*misdemeanor*. A mi juicio estas palabras significan que toda
persona que aconsejare á otra en la comisión de dicho acto, ó
ayudare á otra en la comisión del referido acto, es culpable
de *misdemeanor*. Cualquiera otra interpretación, y especial-
mente el agregar las palabras *en la comisión á la palabra
aconsejare,* es una interpretación forzada, y no puede acep-
tarse por una corte de apelación que trate seriamente de llevar
á cabo la intención de la Legislatura, según estamos obligados
á hacer de acuerdo con las reglas fundamentales de la inter-

pretación adoptadas por todas las cortes del mundo. Nunca hablamos de que una persona aconseje á otra en la comisión de un acto, sino de aconsejar ó solicitar á otro á que cometa un acto; ó que deje de hacerlo. El consejo queda terminado antes de comenzarse el acto; el consejo es completamente distinto del acto que es la materia del consejo. No es así con respecto á la palabra *ayudar.* La ayuda se presta en el acto de la ejecución ó en la comisión de un delito. Estas distinciones son requeridas, no sólo por la gramática sino que están indicadas por los preceptos de la razón. ¿Las aceptaremos?

¿Qué diremos de la crítica que pudiera hacerse de la acusación? No se tomó excepción alguna á la acusación en el acto del juicio ni se presentó ningún alegato en esta corte á nombre de los acusados. Si existen errores en la acusación no son fundamentales. Indudablemente que el procedimiento es suficiente á falta de una excepción especial, señalando sus defectos. Ciertamente esta acusación contiente todos los requisitos mencionados en la sección 82 de nuestro Código Penal, y de acuerdo con las disposiciones de dicha sección, debía aceptarse como suficiente.. Cualquier criterio al efecto de que no es suficiente la acusación, debe estar fundado en el parecer de que el delito de incitar á una persona á que cometa un *misdemeanor* no está completo hasta que no se haya cometido tal *misdemeanor* á conseceuncia del consejo dado. Tal proposición, en mi concepto, es contraria á las resoluciones casi uniformes que se encuentran en los numerosos tomos de opiniones dictadas en los tribunales americanos. Vamos á examinar brevemente estas resoluciones, ó por lo menos, algunas de las muchas que se encuentran en los libros sobre este particular. Allá por el año 1827, un tribunal muy sabio, en el Estado de Connecticut, por medio del Juez Peters, al discutir esta misma cuestión, dice lo siguiente:

"Pero aun admitiendo que la citada carta no constituye el libelo, es ciertamente.una instigación para que se cometa un delito más grave. Invita explícitamente á la Sra. White para que haga una cita con

él en su casa, ó en algún otro sitio, para cometer el adulterio con él. Ya he demostrado que el adulterio es un delito muy grave, anteriormente capital, y que ahora se castiga como los demás *felonies;* y el intentar su comisión, ó el instigar á otro para que cometa tal delito, es por lo menos, un delito ó *misdemeanor* grave. Y ya hemos dicho que un delito y *misdemeanor* grave son muy parecidos é igual á un *felony* en cuanto á la culpabilidad, (*State* v. *Knapp,* 6 Conn., 415), de los cuales tiene jurisdicción la corte superior, por virtud de las leyes escritas y la ley común. (Stat. tit. 22, sec. 98; *State* v. *Danforth,* 3 Conn., 112).

"Pero se arguye que la simple intención de cometer un acto malo no se puede denunciar sin que se haya cometido el acto; pero ¿no se ha cometido un acto cuando se denuncia que el acusado ha instigado á otro á cometer adulterio? La instigación (ó solicitación) es un acto, y no permita Dios que no se le considere como un delito.

"Yo soy de opinión que la acusación es suficiente y recomiendo que se desestime la moción por la que se pide el sobreseimiento de la causa. Los demás jueces eran del mismo parecer, á excepción del Juez Brainard, que estaba ausente. Suficiente la acusación.

"*Estado de Conn.* v. *Avery,* 18 Am. Dec. 107, 108; 7 Conn., 266."

Si esto podía resolverse de acuerdo con la ley común, á falta de una ley sobre la materia, ¿cómo vamos nosotros á hacer caso omiso ó á negarnos seguir á esta respetable autoridad en vista de una ley como la nuestra, cuyas claras disposiciones nos obliga á hacerlo?

Otra vez en el año 1883, más de cincuenta años después, en el Estado de Massachussetts, se sostiene la misma doctrina. Vamos á reproducir un extracto largo de un dictamen importante emitido por el Juez Presidente Morton, en un caso algo semejante al que nos ocupa. Primero reproduciremos una copia de la acusación, y algunas observaciones de la exposición del caso, y después, todo el dictamen. A la letra dicen:

"La acusación dice: Los citados jurados del Pueblo, bajo juramento exponen que John E. Flagg, residente en Royalston, en dicho Condado, en el día 21 de mayo del año de 1883, en Royalston, en dicho Condado, solicitó, instigó y trató de procurar á un tal Tomás Stafford, criminal, intencional y maliciosamente, para que pegara

fuego y quemara cierto edificio, á saber: un granero de Ellen H. Clark, situado dicho granero en el citado pueblo de Royalston, ofreciéndole allí malvada, deliberada y viciosamente al citado Tomás Stafford, una gran cantidad de dinero, á saber: la suma de diez dollars, con intención por parte del repetido Juan E. Flagg, mediante dicha suma y en ese tiempo y sitio, de procurar á dicho Tomás Stafford para que, criminal, intencional y maliciosamente pegara fuego é incendiara al citado granero de la repetida Ellen H. Clark.

"Y los citados Jurados, bajo juramento exponen, además, que el susodicho John E. Flagg, del citado pueblo de Royalston, en el Condado antes mencionado, en el día 21 de mayo del año mencionado, en el repetido pueblo de Royalston y el Condado antes citado, malvada, deliberada y viciosamente instigó é incitó á un tal Tomás Stafford, para que, criminal, intencional y maliciosamente pegara fuego é incendiara un edificio á saber: un granero de Ellen H. Clark, situado en el mencionado Royalston, con intención, por parte del repetido Juan E. Flagg, de perjudicar á la citada Ellen H. Clark.

"En la corte superior, antes de haberse formado la lista del jurado, el acusado hizo una moción pidiendo se desestimase la acusación porque "ninguno de los cargos de las misma establece suficientemente un acto evidente, encaminado hacia la comisión del delito que se alega haber sido cometido. El Juez Baker desestimó la moción, anotando una exposición del demandado.

"No había prueba de que el testigo trató jamás de pegar fuego al referido granero.

"Juez Presidente Morton.—Es una ofensa denunciada de acuerdo con la ley común el aconsejar é instigar á otra persona á cometer un *felony,* ú otro delito grave, aun cuando no tenga efecto, y no se realice la comisión del delito aconsejado. (*Commonwealth* v. *Willard,* 22 Pick, 476; *Rex* v. *Higgins,* 2 East, 5; *Rex* v. *Phillips,* 6 East, 464; *Regina* v. *Ransford,* 13 Cox C. C., 9; *State* v. *Avery,* 7 Conn., 266.) Los cargos primero y segundo de la acusación en el presente caso, alegan suficientemente que el acusado solicitó á un tal Tomás Stafford, para que incendiase el granero de Ellen H. Clark, y consignó un delito de acuerdo con la Ley común.

"Es claro que la prueba tendió á sostener estos cargos y, por tanto, la Corte se negó debidamente á desestimar la acusación, y así mismo se negó debidamente á conceder la petición del demandado, pidiendo le diera instrucciones al jurado al efecto de que en vista de la prueba no estaba autorizado á declarar culpable al acusado bajo ninguno de los cargos que se le hacía en la acusación.

"No es necesario considerar la cuestión si los delitos mencionados en los cargos tercero y cuarto de la acusación fueron justificados por la prueba. En las instrucciones dadas al jurado se les dijo que no podían declarar culpable al acusado con motivo de dichos cargos, á no ser que llegasen á la conclusión de que el acusado había pagado el dinero á Stafford para inducirle á incendiar el granero. Esto apoyó y probó los dos primeros cargos, y, por lo tanto, un veredicto general de culpabilidad fué propiamente presentado, puesto que se alega en la acusación que los varios cargos son distintas explicaciones del mismo acto. Bajo tal veredicto la sentencia es una convicción de un solo delito y se considera de acuerdo con el cargo que es bueno y el cual es aplicable á la prueba. (*Commonwealth* v. *Fitchburg Railroad*, 120 Mass., 372; *Commonwealth* v. *Boston & Maine Railroad*, 133 Mass., 383; *Commonwealth* v. *Nichols*, 134 Mass., 531; *Commonwealth* v. *John E. Flagg*, 135 Mass. Rep., 545.)"

También ha sido resuelto por el Juez Cranch en la Corte de Circuito del Distrito de Columbia, en el año 1834, que es un delito denunciable (*por indictment*) el incitar á una persona á que cometiera un *misdemeanor,* aún cuando en realidad no fuera cometido. (Véase el caso de *United States* v. *Lyles,* No. 15,646, 26 Fed. Cas. y 4 *Cranch Circuit Court Reports,* 461.)

En una nota extensa al caso del *Estado de Washington* v. *James Butler* relatado en 25 L. R. A., página 434, el Sr. Farnham discute la cuestión de instigar á la comisión de un delito, y expresa el criterio de que tal instigación es de por sí un delito. El expresado señor dice lo siguiente:

"La regla verdadera parece ser la propuesta por el Juez Lawrence en el caso de *Rex* v. *Higgins,* 2 East 5, según el cual, para determinar si el hecho ha de ser motivo de acusación hay que fijarse en si es ó no perjudicial á la comunidad. Esto tendría que ser determinado por la opinión general de la comunidad que es la última fuente de toda ley humana. Por supuesto, la opinión general de distintas comunidades se diferencia, pero no se diferencia más con respecto á esta cuestión que otros."

El comentarista, además, dice:

."Sin embargo, una consideración en todos los casos es evidente, y es que la ofensa que se propone cometer por el consejo ó incitación

á otro, es de carácter altamente grave, tendente á perturbaciones de la paz, ú otros graves desórdenes, ó violencia, siendo lo que generalmente se considera *mala in se,* ó criminales de por sí, ó en contradistinción á *mala prohibila,* ó actos distintos prohibidos por leyes positivas.''

Los casos citados en esta nota sostienen ampliamente la proposición que es inmaterial si la solicitación hecha fué ó nó eficaz, ó si resultó ó nó en la comisión del delito aconsejado.

Un caso reciente resuelto en 1892 por un eminente tribunal de un Estado, revisa casos anteriores y discute extensamente la cuestión que nos ocupa.

En ese caso la distinción entre solicitar á otra persona para que cometa un *felony* é intentar la comisión de un *felony,* se hace de un modo concluyente.   En la opinión de la Corte Suprema de South Carolina, en el caso del *Estado* v. *Bowers,* relatado en el libro 15 L. R. A., en las páginas 199, 200 y 201, el demandado fué acusado de haber incitado á otro á que cometiera el delito de incendiar; siendo el cargo de la acusación que:

''El acusado, intencional, ilegal y maliciosamente, solicitó, instigó y trató de persuadir á un tal Thompson Mayer, para que, criminal, intencional y maliciosamente, pegara fuego é incendiara á cierta casa, á saber: la casa vivienda de un tal Anderson G. Mayer, etc.''

El abogado del acusado presentó una moción para que se desestimase la acusación, habiendo sido admitido en el informe oral que la casa no se incendió y la moción fué concedida.   El juez sentenciador parece haber confundido los hechos de solicitar la comisión de un delito y el intentar la comisión de un delito.   La Corte Suprema dice:

''No se niega que el intentar la comisión de un *felony* es un delito denunciable, y por lo tanto, la cuestión aquí queda reducida á si el solicitar á otro que cometa un *felony,* acompañada tal solicitación del ofrecimiento de una recompensa, y la entrega á la persona solicitada de los medios de cometer el *felony,* constituye el delito de intentar

la comisión de un *felony,* en caso de quedar rechazado el ofrecimiento, y de no hacer uso de los medios facilitados para el objeto indicado."

La corte dice:

"Indudablemente que existe alguna contradicción entre las autoridades respecto á la cuestión de si una mera instigación á cometer un *felony* constituye de por sí un atentado de cometer el *felony;* negando dicha proposición uno de los más respetables autores (Wharton) de ley criminal, mientras que la sostiene otro autor eminente (Bishop). Pero no es necesario discutir aquí esta cuestión, puesto que en el presente caso el delito imputado no consiste de una mera instigación á cometer un *felony,* pero está acompañado de actos, el ofrecimiento de una recompensa, y facilitando los medios de cometer el *felony;* y creemos que ha sido demostrado claramente por el análisis de las autoridades presentadas en el informe oral del fiscal, que cuando la instigación á cometer el *felony* se acompaña de los actos imputados, la gran mayoría de las autoridades está á favor del parecer que el delito está completo. Esto es de acuerdo con la razón, lo mismo que con las autoridades."

Sin embargo, la corte no sigue ocupándose de este extremo, y procede directamente á considerar la misma cuestión que se presenta en esta causa de la siguiente manera:

Este caso envuelve otra cuestión que sostiene igualmente las conclusiones que hemos adoptado. Se verá que la acusación (la parte material, de la cual ya ha sido consignada), no contiene ningún cargo formal del delito llamado atentado de cometer un *felony,* aunque parece haber sido considerada así por el juez de circuito, y, por tanto, nosotros también la hemos considerando, bajo ese aspecto en lo que hemos consignado ya en la presente. Al contrario, el delito imputado es de *instigar á otro para que cometiera un felony,* que parece se trata en algunos de los caso como un delito distinto al de atentar la comisión de un *felony.*"

La corte comenta el caso de *Stabler* v. *Commonwealth,* 95 Pa., 318, y dice:

"En una nota al caso últimamente citado, los criterios contradictorios de Wharton y Bishop á que se ha hecho referencia anterior-

mente, se mencionan, y se citan varios casos que demuestran que el solicitar la comisión de un delito ha sido muchas veces castigado como solicitación. También hemos visto en libros de respetable autoridad sobre procedimiento criminal, modelos para acusaciones por el delito de solicitar la comisión de un crimen, así como modelos para acusaciones por atentados á cometer *felonies* los cuales son distintos y diferentes. (Hace referencia á autoridades.)

Entonces la corte resuelve el punto discutido en el presente caso y dice:

"Ahora bien, si la acusación en el presente caso puede considerarse como una acusación por solicitar la comisión de un *felony,* creemos que puede sostenerse si las alegaciones se justifican por la prueba. *Rex* v. *Higgins,* 2 East 5; *People* v. *Bush,* 4 Hill, 133; *State* v. *Avery,* 7 Conn., 266; 18 Am. Dec., 105; y otros casos citados en 1 Bishop Crim. Law, 7 ed., sec. 767, et seq.

"Por lo tanto, somos de opinión que el juez de circuito incurrió en error al conceder la moción para desestimar la acusación.

"*State* v. *Bowers,* 15 L. R. A., p. 199, resuelto por la Corte Suprema de Carolina del Sur en 11 de febrero de 1892."

Indudablemente que este caso establece el principio por la razón y por la autoridad, que el aconsejar ó solicitar la comisión de un delito, bien sea un *felony,* bien un *misdemeanor,* es una ofensa completa y determinada contra la ley, independiente del hecho de que podrá ó nó haber sido aceptado tal consejo y llevado á cabo, mediante la comisión de un acto evidente por parte de la persona aconsejada ó instigada á cometer el delito. El escribir los apelantes Dessús y García este artículo, y la publicación del mismo en el periódico *El Rumor Diario,* fué un consejo y una solicitación general por parte del demandante á todo el mundo y especialmente al Sr. Padilla, cuyo nombre se menciona en dicho artículo, y á las personas á quienes se refería el telegrama enviado, para que cometieran el delito de motín que es un *misdemeanor,* y el de asesinato, cuyo delito es un *felony* de acuerdo con la ley; y no importa, según las resoluciones anteriormente citadas, si obraron ó nó de acuerdo con dicho consejo, ó si lo recibieron leyendo el pe-

riódico; el delito era completo desde el momento que se dió el consejo, y el castigo prescrito debe seguir el delito.

Pero el error de sostener que el delito de incitar á alguna persona á cometer un *misdemeanor* no es completo, á no ser que el *misdemeanor* se cometa á consecuencia del consejo dado, sería intensivo cuando se toma en consideración que, de acuerdo con la sección 359 del Código Penal, no es necesario para constituir el delito de motín, que cualquier acto se verifique, además de la amenaza de emplear la fuerza ó violencia, turbando la paz pública, si se acompaña de la facultad de ejecutar inmediatamente el acto. Indudablemente que el artículo publicado en el periódico constituye una amenaza de emplear la fuerza ó violencia, así como consejos de hacerlo, y en este delito, es decir, el de motín, el crimen está completo aún bajo el parecer erróneo adoptado por algunas personas de que el acto aconsejado ha de llevarse á cabo para completar el delito denunciado en el artículo 47 del Código Penal.

Unas pocas palabras más con respecto á la acusación. Las primeras líneas de la acusación imputan el delito de aconsejar un motín y las alegaciones del documento, que siguen inmediatamente, expresando cómo fué cometido el delito, fueron simplemente explanatorias y, por lo tanto, innecesarias para la validez de la acusación. Y en las últimas líneas de la acusación se hace referencia á los estatutos que fueron infringidos y aplicados á los hechos que se imputan como constitutivos del delito. Ciertamente que no pueden los acusados alegar que no fueron debidamente notificados del delito, cuya comisión se les imputa. La acusación, según los estatutos de Puerto Rico, debe ser considerada como suficiente.

Esta discusión es probablemente muy extensa para fijar la aplicación de la ley al caso; ¿qué diremos respecto á los hechos? Según la ley, no era necesario que ningún acto, ni criminal ni otra clase, siguiera el consejo dado. El delito era completo sin que se verificara cualquiera otra acción, por parte de otra persona después de dado el consejo. No comprendo como es posible que digan, y mucho menos que sos-

tengan seriamente los acusados en el presente caso, que no se les imputó ningún delito en la acusación y que no se probó en el acto del juicio. Y la presentación del artículo publicado que no es y no puede ser negado, prueba completamente la imputación hecha. Pero además de la publicación, las siguientes declaraciones de testigos aparecen en los autos y merecen consideración.

Los testigos de cargo declararon sustancialmente lo que sigue:

El capitán de la Policía Insular, Francisco Cabrera, dijo que el 27 de mayo, en cuyo día se encontraba en Arecibo, hubo allí un *meeting,* en donde se leyó un artículo de un periódico de San Juan, en que se concitaba á los detenidos, que lo habían sido por el hecho de estropear malamente el policía Quijano, resultando muerto un hombre llamado Rosado; que cuando se conducía á los detenidos se detuvo frente á la casa de Roses, á uno que decía: "Así es como se hace, cabeza por cabeza, vida por vida," como decía dicho periódico; el declarante leyó *El Rumor Diario,* que circuló profusamente, y se leía en casi todos los sitios públicos; que en la fábrica de tabacos, "La Cubana," se armó una gritería, aplaudiendo el artículo que decía, "cabeza por cabeza, vida por vida." Preguntado por la defensa, declaró que fué á Hato-Viejo después de terminado el *meeting* y de haber pasado todo, no presenciando nada personalmente.

José Inés Gómez, juez municipal de Arecibo, dijo que, con motivo de presentársele un policía herido, fué á Hato-Viejo el 27 de mayo, en donde se celebraba un *meeting;* allí instruyó las diligencias concernientes á su cargo; hubo un muerto y heridos, entre ellos un policía; que se comentaba en todos los círculos, sobre todo, en una fábrica de tabacos, un artículo publicado por *El Rumor Diario;* pero no le consta que se leyera en Hato-Viejo; y en las diligencias que instruyó, un acusado dijo que se había leído en otras partes, pero no en el *meeting.*

Nicomedes Rivera, que es miembro de la Federación de trabajadores, que él declaró en Arecibo la huelga de trabajado-

res Agrícolas, tomó parte en diferentes *meetings,* y en el de Hato-Viejo, en donde no se leyó ningún periódico; que fuera del *meeting* y en la carretera, hubo una contienda entre paisanos y policías, porque unos detenidos se negaron á seguir á un policía, resultando heridos, entre ellos, un policía, Quijano, y un paisano que después murió, Rosado; que circuló en Arecibo *El Rumor Diario,* con el artículo titulado "Vida por Vida, Cabeza por Cabeza;" que la cuestión pasó á una distancia regular del sitio del *meeting* y sólo distinguió el momento en que el paisano Rosado se iba encima del policía Quijano; que Manatí y Barceloneta son del distrito de Arecibo.

Horacio González Santos, que era agente de *El Rumor Diario,* en Arecibo, declaró que recibió el número correspondiente al 24 de mayo de este año, en paquetes de unos quince ó veinte ejemplares, que repartió á los suscritores; y que supo, por rumores, que vendía ejemplares un empleado de la Federación.

Francisco Gabriel, que es jornalero, dijo que no trabajó durante la huelga que hubo en el mes de mayo; y que el 27 de ese mes, vendió el periódico *El Rumor Diario,* que le había dado Iglesias; y que no sabe si vendió el ejemplar que traía el artículo en cuestión, porque no sabe leer.

Ramón T. Quijano, Policía Insular, declaró que detuvo á uno que coaccionaba á los trabajadores para que no trabajaran; que se le armaron los detenidos que llevaba, y le hirieron por detrás, resultando muerto un tal Rosado; que la detención la hizo en el camino de Utuado, y que á la orilla de la carretera había un *meeting;* que al llegar á la entrada del *meeting* se armaron los detenidos y le atacaron; y que los detenidos no estaban en el *meeting,* sino en el camino.

Manuel de J. Boneta, secretario de la corte de distrito, declaró que, en un juicio seguido ante dicha corte contra los acusados Vendrell, Hernández, Rivera, Santana y Genaro Torres, éstos fueron declarados culpables por el jurado, á excepción de uno, que fué declarado inocente; que en ese juicio había declarado el policía Quijano, por heridas que había

recibido; y que el jurado declaró á los acusados culpábles del delito de acometimiento y agresión con circunstancias agravantes.

Los testigos de la defensá declararon sustancialmente lo siguiente:

Pedro García Andújar, tabaquero de la fábrica "La Cubana," dijo que allí se leen varios periódicos, entre ellos *El Rumor Diario;* que en 27 de mayo estuvo en un *meeting* de Hato-Viejo, hablando en él, y que allí no se leyó *El Rumor Diario,* ni se comentó dicho periódico; que ese día, hubo en el citado barrio un *revolú,* llegando entonces el policía Quijano, que salió herido, y un tal Rosado murió; que había huelga en Arecibo, Manatí y Barceloneta que pertenecen al distrito de Arecibo, así como en Camuy, que también pertenece al mismo distrito.

Guillermo G. Rojas, tabaquero de "La Cubana," dijo que en esa fábrica se leen varios periódicos y entre ellos, *El Rumor Diario;* que estuvo en el *meeting* de Hato-Viejo, del 27 de mayo, en el que tomó parte; que allí no se leyó *El Rumor Diario,* ni se habló de ese periódico; que estaba en la oficina, recontando unos recibos, cuando oyó un disparo; preguntó que pasaba, y le dijeron que era una cuestión que se había formado entre la policía; pero cuando se asomó vió la gente desparramada; que ese día lo detuvieron en Arecibo: que no estuvo en la carretera cuando los sucesos; y que habló en el *meeting* Nicomedes Rivera, con motivo de venir unos peones del barrio de "Don Alonso," que se aglomeraban en un puente al doblar la carretera, ignorando por qué se aglomeraban esos peones, que no eran miembros de la Federación.

Con respecto á la cuestión que no se considera necesaria para una declaración de culpabilidad, de si el consejo produjo ó nó el motín, la prueba no es completamente satisfactoria. Por lo menos hay una pequeña contradicción en este punto; que la prueba del fiscal era principalmente circunstancial. Pero con arreglo á la regla sentada por este tribunal en la causa del *Pueblo de Puerto Rico* v. *D. Díaz, alias Leña*

*Verde,* resuelta en 6 de marzo de 1907, nó puede revocarse el veredicto del jurado y fallo del tribunal sentenciador, con respecto á cuestiones de hecho, por este tribunal, á menos que sea claramente erróneo ó el resultado de prejuicios ó pasión. Ciertamente no hay nada en los autos que indique que en el caso de que se trata existe tal estado de cosas. Ni el veredicto ni la sentencia han sido objeto de impugnación por motivo semejante, ya ante este tribunal ó ante el tribunal inferior. Por consiguiente, debemos ser muy refractarios á modificar el veredicto y la sentencia por falta de prueba, aún cuando existiera tal falta que, según nuestra opinión, no existe en este caso.

Los hechos necesarios en el caso son pocos y concluyentes. En cuanto á los elementos esenciales del delito, no hay obscuridad alguna en la prueba. Se ha cometido el delito. Se ha probado de una manera clara é inequívoca la culpabilidad de los acusados del delito que se les imputaba y no aparece error alguno en los autos.

Cualquiera objeción que pudiera surgir en la consideración del presente caso, sería tan sólo respecto al procedimiento, y de acuerdo con la ley de 30 de mayo de 1904, (véase las Leyes de la Asamblea Legislativa de 1905, p. 10), á este tribunal le está prohibido revocar la sentencia de la corte inferior, cuando los derechos de los acusados no hayan sido perjudicados de ninguna manera. No se ha demostrado nada aquí en este sentido á favor de los apelantes, ni tampoco aparece esto de un examen cuidadoso de los autos. Todas las quejas presentadas son simplemente técnicas y los hechos constitutivos del delito imputado no han sido negados ni puestos en duda, ni podrían serlo. Bajo éstas circunstancias, el fallo no debe modificarse. (Véase el caso de *El Pueblo de Puerto Rico* v. *Rodríguez,* resuelto por este tribunal el día 11 de marzo del presente año).

Estos acusados han sido debidamente encausados, juzgados imparcialmente y declarados culpables, y la apelación en el presente caso, después de un cuidadoso examen de al-

gunos meses, debe terminarse confirmando la sentencia dictada, por la corte inferior.

De acuerdo con la ley y los hechos del presente caso, la sentencia dictada por la Corte de Distrito de Arecibo el día 28 de julio de 1906, no debe cambiarse; y queda, por lo tanto, confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones, y Asociado, Figueras.

Jueces disidentes: Sres. Hernández y Wolf.

### VOTO DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Creo que el tribunal inferior procedió correctamente al resolver que por estar un auto de *habeas corpus* pendiente de resolución ante un tribunal de apelación no queda privada dicha corte inferior de la jurisdicción que tiene para conocer de la causa.

La segunda alegación de los apelantes es que la Corte de Distrito de Arecibo no tenía jurisdicción, porque la publicación por la cual los apelantes fueron denunciados se hizo en San Juan y nó en Arecibo. El caso de *In re Palliser* que se encuentra en el volumen 136 de los *Reports* de la Corte Suprema de los Estados Unidos, en la página 256, parece resolver esta cuestión de jurisdicción. Si según consta de la prueba practicada en el presente caso, el periódico *El Rumor Diario* circuló en Arecibo, debemos considerar que los acusados tuvieron la intención de que la publicación surtiera sus efectos, ó sea, que se remitiera por el correo y llegara á otro pueblo donde la misma fuera leída; y si se cometía un delito al hacer que dicha publicación circulara por la ciudad de San Juan, también se cometía circulando por Arecibo. Además, según expresa el fiscal, la denuncia no se dirije contra la misma publicación, sino por el hecho de aconsejar ó ayudar á cometer un *misdemeanor,* el cual consejo ó ayuda

puede darse por medio de un periódico remitido por correo ó llevado á otro pueblo, de igual modo que si la persona que esto hace estuviera en realidad presente en dicho pueblo.

Puesto que la publicación sometida á nuestra considera-ción es de carácter sedicioso, muy pequeña duda puede haber de que una acusación formulada por insitar la comisión de un delito, basada en la ley común, podría prosperar contra los apelantes en cualquiera de los Estados de la Unión.en donde dicha ley común rige. Sin embargo, en Puerto Rico estamos gobernados por nuestras leyes locales. Véase *Romeu v. Todd,* resolución de la Corte Suprema de los Estados Unidos de 27 de mayo de 1907, y las resoluciones referentes á Puerto Ri-co que en aquélla se citan. Y en cuanto á la igualdad de cri-terio, véase *Hawaii v. Mankichi,* 190 U. S., 197.

Sin embargo, aún cuando la ley común fuera aplicable á Puerto Rico, la acusación está hecha con arreglo á las seccio-nes 47 y 359 del Código Penal, y con respecto á esto la única cuestión que verdaderamente se encuentra sometida á la con-sideración de la corte, es la de la interpretación de aquellas secciones.

La cuestión que entonces se presenta por sí á nuestra con-sideración, es si se imputó la comisión de un *misdemeanor,* ó si se probó la comisión de tal *misdemeanor.* Debe notarse que las palabras del estatuto son "toda persona que aconse-je ó ayude á otra á cometer tal delito." El verdadero sig-nificado del estatuto es que algún crimen se haya cometido. Las palabras "en la comisión" no son susceptibles de ninguna otra interpretación. A más de esto, nadie puede ayudar á la comisión de un delito sin cometer también un delito. Las palabras "aconseje ó ayude" se usan de igual manera en la sentencia, por lo tanto, si se formula una acusación con arreglo á esta sección, necesariamente debe presuponerse la ejecución por otro ú otros, de algún acto, estando en la mente de los acusados la intención y el propósito de aconsejar el acto.

La sección 47 más bien parece tratar de la pena con que se castiga un *misdemeanor* que no de su definición, siendo dicha

sección una repetición de la 36, en la que puede verse que lo que la Legislatura tuvo presente fué la "comisión de un delito."

La sección 47 se encuentra en nuestros estatutos en el Capítulo que trata de "Partícipes en los Crímenes."

Por la teoría de que la sección 47 define como crimen la incitación al crimen, la incitación que tiene lugar con arreglo á dicha sección sería aplicable solamente á un *misdemeanor;* el incitar la comisión de un *felony* no está en absoluto definido en el Código Penal. De modo que, el efecto de interpretar esta sección en el sentido de que una incitación para que se cometa un delito es punible por sí, nos llevaría á la conclusión de que una persona que aconseja á otra para que ésta agolpee ó pegue á una tercera persona, podría ser castigada, pero no habría pena prescrita por incitar á cometer un asesinato. Esto prueba por sí mismo que no fué la intención de la Legislatura, al aprobar el Código Penal, hacer que la sección 47 definiera el delito sustantivo de una incitación á que se cometa un crimen.

Todas las autoridades están acordes en que la incitación á la comisión de un delito constituye por sí un delito independiente y sustantivo. Algunos de estos eran castigados y otros nó por la ley común, que constituye una razón mayor, porque una ley, cuyo objeto es definir tal delito debía definirlo de una manera clara é inequívoca. Así se ha hecho en las leyes de diferentes localidades que definen una incitación especial para la comisión de un delito. La seción 47 trae á mi mente la misma idea que la 36, que cuando se ha cometido un crimen las personas que ayudan ó aconsejan "su comisión" pueden ser castigadas por cometer un *misdemeanor.* La tentativa de ambas secciones es hacer desaparecer la diferencia entre cómplices antes del hecho y principales, y no hacer diferencia con respecto á la pena.

Véanse también las seciones 31, 32 y 33 del Código Penal de California.

Las secciones 47 y 18 están juntas en el índice de nuestro

Código Penal, y en el Código Penal de California el "encabe-
zamiento" de la sección 659 y las referencias muestran la mis-
ma intención. En la sección 47 la misma repetición de la pa-
labra "acto" dejándose aparte las palabras "en la comisión"
excluye la idea de que la simple incitación independiente de
alguna tentativa era la que se trataba de definir.

Ahora pues, la denuncia en el presente caso no acusa á
los procesados de haber ayudado y excitado á que se produ-
jera un motín, ni lo que es más, que ellos ayudaran ó excitaran
la formación de determinado motín, sino que la imputación
es, que los mismos publicaron un artículo anterior á la reali-
zación de ciertos sucesos en Arecibo, cuya publicación, con re-
ferencia á la huelga, parecía tendente á producir un motín.
En otras palabras, no se ha alegado que ninguno de los actos,
ó la publicación de los acusados hubiera motivado el motín
que se dice ocurrió en Arecibo, así como tampoco que el mis-
mo fuera consecuencia de tal publicación. En la denuncia
tampoco se expresan los hechos que constituyen un motín,
con arreglo á la sección 359.

Es cierto que la denuncia hace referencia á ciertos suce-
sos en Hato-Viejo, donde un policía y un jíbaro fueron heri-
dos, pero nada dice de quién había allí, ó que aquéllos que se
encontraban presente y que tomaron parte en el supuesto mo-
tín tuvieran conocimiento de la publicación, ó que la misma
ejerciera alguna influencia sobre ellos.

De la prueba del juicio resultó que el periódico fué leído
en una fábrica. Que posteriormente tuvo lugar un *meeting*
de trabajadores. El testigo Cabrera y otros declaran que el
periódico se leyó en la fábrica, pero los testigos de ambas
partes están acordes en declarar que el artículo no se leyó
en el *meeting*. No se ha probado la relación que tuviera el
*meeting* con la fábrica, á no ser que la misma se deduzca de la
declaración de un testigo del acusado, que dice estaba presente
en ambos sitios y que el artículo se leyó en el *meeting* y no
en la fábrica. De modo que el testimonio de este testigo, que
fué el único que estuvo presente en ambas partes demuestra

que el artículo se leyó en la fábrica y nó en el *meeting*. De modo que el testimonio de este testigo que era el que únicamente se hallaba presente en ambos lugares, demuestra que el artículo no fué leído en el *meeting*.

También los testigos hacen referencia á un motín que había tenido lugar. Sin embargo, esto queda sometido á meras deducciones, así como si el *meeting* estaba ó nó relacionado con el motín. En resumen, solamente se ha probado que el motín ocurrió después del *meeting* y á corta distancia del mismo.

Dice la mayoría de la corte en su opinión, que la cuestión referente á la insuficiencia de la denuncia no fué motivo de discusión por las partes. Esta corte por iniciativa propia ha revocado casos civiles por el fundamento de que la demanda no aducía hechos suficientes para determinar una causa de acción. Por virtud de la Ley de 30 de mayo de 1904, siempre hemos examinado autos con motivo de errores fundamentales.

En el caso de *El Pueblo de Puerto Rico* v. *Vicente Hernández,* resuelto en 15 de diciembre de 1905, esta corte, por su propia iniciativa, revocó el caso por insuficiencia de la acusación. En ese caso no había pliego de excepciones, ni moción ó excepción previa, así como tampoco las partes comparecieron ante este Tribunal. Lo mismo se resolvió en el caso de *El Pueblo de Puerto Rico* v. *Ramón Dovato García,* resuelto en 28 de diciembre de 1905. Lo mismo también en el de *El Pueblo de Puerto Rico* v. *Eloy Torrellas.*

Aparece, por tanto, que no solamente no se imputó delito alguno con arreglo á la sección 47 del Código Penal, sino que ninguno se probó, y siendo así debió haberse revocado la sentencia y ordenado la celebración de un nuevo juicio.