JUAN ANTONIO CORRETJER, peticionario, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE BAYAMÓN, demandado; EL PUEBLO DE PUERTO RICO, interventor.

Núm. 14.—*Sometido:* Junio 5, 1951. *Resuelto:* Julio 16, 1951.

*Rafael Pérez Marchand y Santos P. Amadeo,* abogados del peticionario; *Hon. Procurador General Víctor Gutiérrez Franqui, J. Rivera Barreras, Fiscal del Tribunal Supremo y Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados del interventor, demandante en la causa principal.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El fiscal de Bayamón formuló contra Juan Antonio Corretjer ante el Tribunal Municipal de Puerto Rico, Sala de

Río Piedras, una denuncia por infracción al artículo 47 del Código Penal, (¹) en relación con el artículo 359 del mismo Código. (²). Alegó en ella sustancialmente que en ocasión de encontrarse Puerto Rico en un estado de alarma por los sucesos ocurridos el 30 de octubre de 1950, cuando miembros del grupo Nacionalista asaltaron la residencia oficial del Gobernador de Puerto Rico, con ánimo de asesinarlo, y dentro de las siguientes 72 horas miembros del mismo grupo atacaron cuarteles de la policía, incendiaron hogares, asaltaron hospitales e intentaron asesinar al Presidente Truman, allí y entonces ilegal, voluntaria y maliciosamente y frente al cuartel de la policía de Guaynabo, donde había un grupo de personas reunidas, Corretjer aconsejó e incitó a éstas a que cometieran el delito de motín, atacando juntas el cuartel de la policía de Guaynabo, y a que emplearan fuerza y violencia, diciendo en alta voz y dirigiéndose a la multitud allí reunida que "en Guaynabo iba a pasar peor que en Jayuya y Utuado, y hay que atacar este cuartel para acabar con los abusos."

A esa denuncia presentó el acusado la excepción perentoria de falta de hechos suficientes para constituir causa de acción y de que a la luz de los artículos 47 y 359 del Código Penal los hechos denunciados no constituyen delito público. Declarada sin lugar la excepción y celebrado el juicio, aquella corte le declaró culpable y le sentenció a sufrir seis meses de cárcel. Apeló para ante el Tribunal de Distrito de Puerto Rico, Sección de Bayamón, y suscitada nuevamente la referida excepción, la misma fué una vez más declarada sin lugar. Visto el caso *de novo* ante el Tribunal de Distrito, éste, luego

---

(¹) El artículo 47 del Código Penal provee:

"Si declarado *'misdemeanor'*, determinado acto, no hubiere pena expresamente señalada en la ley por aconsejar o ayudar a su comisión, toda persona que aconsejare o ayudare a otra en la comisión de dicho acto, incurrirá en *'misdemeanor'.*"

(²) El artículo 359 del Código Penal reza así:

"Todo empleo de fuerza o violencia, que perturbare la tranquilidad pública, o amenaza de emplear tal fuerza o violencia, acompañada de la aptitud para realizarla en el acto, por parte de dos o más individuos, obrando juntos y sin autoridad de ley, constituye un motín."

de oír prueba testifical tanto de parte de El Pueblo como de la defensa, declaró al peticionario culpable del delito imputádole y le sentenció a sufrir la misma pena. Para revisar esa sentencia libramos el auto de *certiorari* autorizado por la Ley núm. 172 de 4 de mayo·de 1949 (pág. 547).

▮▮▮ En la primera de las dos cuestiones fundamentales planteadas, alega el peticionario que el tribunal inferior erró al sostener (*a*) que no obstante los artículos 5(³) y 10(⁴) de nuestro Código Penal la denuncia contra él radicada determina hechos constitutivos de delito público, y (*b*) que de acuerdo con los artículos 47 y 359 de dicho Código el delito de "incitación a motín" imputádole es penable.

Al iniciar la discusión de esos alegados errores el peticionario admite que la cuestión de derecho suscitada ha sido ya resuelta por este Tribunal en forma adversa a su contención en los casos de *Pueblo* v. *Dessús*, 12 D.P.R. 342; *Pueblo* v. *Pillot García*, 26 D.P.R. 557, y en forma modificada, en el de *Pueblo* v. *Echevarría*, 29 D.P.R. 884. Veamos a grandes rasgos lo decidido en ellos:

En el caso de *Dessús*, resuelto en el año 1907, Luis Felipe Dessús y otro fueron acusados, juzgados y convictos del delito de aconsejar un motín, mediante la publicación en el periódico "El Rumor Diario" de un artículo bajo el rubro "Cabeza

---

(³) El artículo 5 del Código Penal dispone que:

"Ninguna persona será arrestada por crimen o delito alguno, que no estuviere expresamente declarado como tal en este Código, excepto por crímenes o delitos contra las leyes de los Estados Unidos aplicables en Puerto Rico, las decretadas por la Asamblea Legislativa de Puerto Rico y por el Congreso de los Estados Unidos, para Puerto Rico."

(⁴) Nuestro Código Penal en su artículo 10 provee que:

"Todo delito público es un acto cometido u omitido en violación de alguna ley que lo prohibe u ordena, aparejando, al ser probado, cualquiera de las penas siguientes:

1. Muerte (La pena de muerte fué abolida en Puerto Rico por la Ley núm. 42 de 1929, pág. 233).

2. Prisión

3. Multa

4. Destitución, o

5. Incapacidad para ejercer cargo alguno de honor, confianza o retribuído."

por Cabeza" "Vida por Vida". Sostuvieron los acusados, entre otras cosas, que en armonía con los artículos 47 y 359 del Código Penal no podía confirmarse la sentencia dictada en su contra a no ser que siguiera un motín como consecuencia directa del consejo dado en el artículo por ellos publicado. Al resolver la cuestión este Tribunal por voz del Juez Asociado Sr. MacLeary se expresó así:

"Nunca hablamos de que una persona aconseja a otra en la comisión de un acto, sino de aconsejar o solicitar a otro a que cometa un acto; o que deje de hacerlo. *El consejo queda terminado antes de comenzarse el acto; el consejo es completamente distinto del acto que es la materia del consejo.* No es así con respecto a la palabra *ayudar*. La ayuda se presta en el acto de la ejecución o en la comisión de un delito. . . Cualquier criterio al efecto de que no es suficiente la acusación, debe estar fundado en el parecer de que el delito de incitar a una persona a que cometa un *misdemeanor* no está completo hasta que no se haya cometido tal *misdemeanor* a consecuencia del consejo dado. Tal proposición, en mi concepto, es contraria a las resoluciones casi uniformes que se encuentran en los numerosos tomos de opiniones dictadas en los tribunales americanos." (Bastardillas nuestras.)

Y luego de examinar una serie de casos resueltos en el continente concluyó que: *"Según la ley, no era necesario que ningún acto, ni criminal ni de otra clase, siguiera el consejo dado"*, y que *"El delito era completo sin que se verificara cualquier otra acción, por parte de otra persona después de dado el consejo."* (Bastardillas nuestras.) En la extensa opinión emitida por el Juez Asociado Sr. MacLeary, concurrieron el Juez Presidente Sr. Quiñones y el Juez Asociado Sr. Figueras. Disintieron los Jueces Asociados Señores Hernández y Wolf, emitiendo este último una opinión a ese efecto.

Transcurrieron los años y en 1918 vino a la consideración de este Tribunal el caso de *Pillot García*, supra. En una breve opinión omitida por voz del Juez Asociado Sr. Hutchison, luego de copiarse la acusación, se dijo meramente que: "La contención del apelante no es materia nueva ante esta

corte y nada hemos encontrado en el argumento desarrollado en el alegato para justificarnos en desautorizar la doctrina que sostuvimos en el caso de *El Pueblo* v. *Dessús*, 12 D.P.R. 342." Concurrieron los Jueces Asociados Señores Del Toro y Aldrey y una vez más disintieron los Señores Hernández y Wolf.([5])

Tres años más tarde esta Corte tuvo ante sí el caso de *Pueblo* v. *Echevarría*, supra, en el cual se acusó a éste de haber infringido el artículo 47 del Código Penal, en relación con el 359 del mismo cuerpo legal. La opinión fué dictada por el entonces Juez Asociado Sr. Del Toro y en ella se parte de la base de que *"basta el consejo sin que sea necesario alegar y demostrar que el crimen aconsejado se cometió para que exista el delito."* Indicándose en seguida que *"Para que un mero consejo pueda constituir un delito, tiene que ser dado en forma tal que lleve en sí mismo, en sus propias entrañas, el fuego del delito, la perversidad del crimen, y que sea capaz de incitar a actuar a otras personas."* (Bastardillas nuestras.) Concluyendo que "Ésa es la situación que claramente presentaron los casos de *Dessús* y *Pillot* . . . pero ésa no es la situación que establece el caso sometido a nuestra consideración y resolución ahora."([6]) Con la opinión así emitida concurrieron los Jueces Asociados Señores Aldrey y Hutchison y firmaron conformes con la sentencia los Jueces Presidente Sr. Hernández y Asociado Sr. Wolf.

---

([5]) Como se ha visto, ya el Tribunal tenía tres nuevos jueces y los tres estuvieron contestes con el criterio enunciado previamente en el caso de *Dessús*.

([6]) La médula de lo dicho por Echevarría fué:

"Camaradas, si el día dos de noviembre, 1920, día de las elecciones, si por casualidad Luis Texidor y otros, nos quieren traicionar para robarnos las papeletas y hacernos perder las elecciones, nos tiramos a la calle y tiro a tiro la defenderemos. . . ."

Se concluyó que "examinadas las palabras que se alega que pronunció el acusado, es necesario concluir que ninguna de ellas constituye un consejo directo a otras personas." El principio legal ya establecido fué una vez más ratificado, pero *las circunstancias de hechos* concurrentes indujeron al Tribunal a revocar la sentencia y absolver al acusado.

760

Así pues, desde el año 1907 y en los únicos tres casos que por un delito similar al envuelto en este recurso han estado ante su consideración, esta Corte ha resuelto por mayoría de sus jueces que interpretado el artículo 47 de nuestro Código Penal en relación con el 359 del mismo cuerpo legal el delito de incitación a motín existe en esta jurisdicción y que, cuando de aconsejar a la comisión de ese delito se refiere, basta el mero consejo, sin que sea necesario alegar y demostrar que el crimen aconsejado se cometió para que tal delito exista.

Estamos contestes con el peticionario en que en Puerto Rico no existen los delitos reconocidos por el Derecho Común (*Common Law Crimes*) y que en armonía con lo preceptuado por los artículos 5 y 10 de nuestro Código Penal en esta Isla solamente existen los delitos estatutarios. También convenimos en que habiendo sido nuestro Código Penal tomado del Estado de California, el mismo lo fué con la interpretación dádale por la Corte Suprema de aquel estado a la fecha en que lo adoptamos, así como en que las decisiones ulteriores de dicha Corte Suprema en relación con el referido Código tienen para nosotros fuerza persuasiva. Empero, aunque la Corte Suprema de California resolvió, conforme alega el peticionario, que la sola incitación no estaba castigada por el Código Penal de aquel estado, notamos que todos los casos por él citados se refirieron a delitos graves.[7] Nuestro Código Penal fué aprobado en 1902 y aunque todos a excepción de uno de los casos que figuran en la nota (7) fueron resueltos antes de ese año, los mismos no son de aplicación al caso que está ante nos. Ello es así debido a que el artículo 47 de nuestro Código Penal se refiere específicamente a "Toda persona que aconsejare o ayudare a otra en la comisión de un acto declarado *"misdemeanor"* y los referidos casos de California tratan de acusaciones por delitos graves.

Sostiene el peticionario que no fué hasta el año 1929 que

[7] *People* v. *Wilson*, 119 Cal. 384 (1897); *People* v. *Squires*, 99 Cal. 327 (1893); *People* v. *Gleason*, 99 Cal. 359 (1893); *Ex parte Floyd*, 7 Cal. App. 588 (1908).

por disposición expresa legislativa se creó en el Estado de California el delito de incitación a la comisión de un delito.([8]) Discrepamos de tal aserto. El hecho de que en el Estado de California se aprobara un estatuto de la índole indicada en la nota (8) no significa, a nuestro juicio, que en dicho estado no existiera, a tenor del artículo 659 de su Código Penal, tal delito cuando se aconsejaba allí la comisión de un delito menos grave. No hemos hallado un solo caso que resuelva lo contrario.

██  Pone gran énfasis también el peticionario en lo dicho por la Corte del Segundo Distrito de Apelaciones de California en el caso de *Schenck* v. *Hirshfeld*, 22 Cal. App. 709 (1913). Ése es, sin embargo, un caso civil, en el cual, según se desprende de la opinión, los demandantes y un tal Coyne apostaron la suma de $500 sobre el resultado de unas elecciones. El demandado era el depositario de la suma apostada. Celebradas las elecciones y anunciado el resultado, se inició un procedimiento para impugnarlas. Antes de que la suma envuelta fuera entregada al ganador, los demandantes notificaron por escrito al depositario que repudiaban la apuesta y que insistían en la devolución de los $500. El depositario se negó a ello, iniciándose entonces la consiguiente demanda para recobrar dicha suma. En el curso de su opinión, confirmando la sentencia del tribunal inferior que declaró con lugar una excepción previa a la demanda, la corte manifestó que un contrato de apuesta resulta ilegal cuando el mismo está pe-

---

([8]) Véase el artículo 653(*f*) del Código Penal de California que lee como sigue:

"Toda persona que incite a otra a ofrecer, aceptar, o a unirse en la oferta o aceptación de un soborno, o a cometer o unirse en la comisión de asesinato, robo, escalamiento, hurto mayor, recibir propiedad hurtada, extorsión, violación mediante la fuerza y la violencia, perjurio, incitación a perjurio, falsificación, o secuestro de menores, será castigada con prisión en la cárcel del Condado por un período que no excederá de un año o en la prisión del Estado por un período que no excederá de cinco años, o con multa que no exceda de $5,000. Tal delito deberá ser probado mediante testimonio de dos testigos, o de un testigo y circunstancias corroborativas."

nado por la ley; que el artículo 60 del Código Penal de California castiga apuestas como la envuelta en el caso y que según lo provisto por el artículo 659 del mismo Código Penal, [9] "Toda persona que *ayudare a otra en la comisión de un misdemeanor* resulta ser un coautor del delito." (Bastardillas nuestras.) Lo así expuesto está en armonía con lo decidido por este Tribunal desde el año 1907 en el caso de *Pueblo* v. *Dessús*, supra, en el cual, como se recordará, se dijo que "El consejo queda terminado antes de comenzarse el acto; el consejo es completamente distinto del acto que es la materia del consejo. No es así con respecto a la palabra *ayudar*. *La ayuda se presta en el acto de la ejecución o en la comisión de un delito.*" (Bastardillas nuestras.) En otras palabras, seis años antes de resolverse el caso de *Schenck* v. *Hirshfeld*, supra, este Tribunal ya había reconocido que cuando de ayudar a la comisión de un delito se trata, es necesario que el delito ayudado se haya cometido, mas no así cuando de aconsejar a la comisión de un delito se refería, bastando en este último caso tan sólo que se aconseje la comisión del mismo.

Hemos examinado minuciosamente y con el mayor cuidado la cuestión aquí envuelta. Ese estudio nos lleva a la conclusión de que debemos ratificarnos en el criterio enunciado por la mayoría de este Tribunal en los citados casos de *Dessús*, *Pillot* y *Echevarría*. En adición a los razonamientos convincentes en ellos expuestos, notamos que el artículo 47 de nuestro Código Penal aparece en su título tercero, bajo el epígrafe "De los partícipes en los crímenes". En el artículo 36, bajo ese mismo título, [10] se dice quiénes se consideran autores

[9] El artículo 659 del Código Penal de California es equivalente al 47 de nuestro Código Penal.

[10] El artículo 36 lee así:

"Todas las personas complicadas en la comisión de un crimen, ya fuere *'felony'* o *'misdemeanor'*, y que directamente cometieren el acto constitutivo del delito, o no hallándose presentes, hubieren aconsejado su comisión o incitado a ella; y todas las personas que aconsejaren o incitaren a menores de catorce años, lunáticos o idiotas, a cometer algún crimen; o que, por medio de fraude, artificio, o violencia, ocasionaren la embriaguez de otra persona, con el fin de hacerle cometer un crimen, son principales o autores en el crimen cometido."

de un delito, indicándose en él, entre otras cosas que "Todas las personas . . . que . . . hubieren aconsejado su comisión o incitado a ella . . . son principales o autores en el crimen cometido." Requiriendo ese artículo que para una persona poder considerarse principal o autor es menester que el delito se haya cometido, el legislador habría realizado un acto verdaderamente fútil si bajo el artículo 47 también se requiriera que el delito se hubiese cometido aun cuando meramente se tratara de aconsejar a otra en la comisión de un acto constitutivo de delito. Por otra parte, el artículo 47 está junto a aquellos artículos que envuelven tentativas, es decir junto a aquéllos en que la persona ha tratado de cometer un delito sin lograr realizarlo. Podría, por tanto, decirse *a fortiori* que el propósito del legislador al colocar el artículo 47 en el sitio en que lo insertó fué castigar el aconsejar a la comisión de un delito, sin que el delito aconsejado se hubiera cometido. En su consecuencia, la cuestión suscitada por el peticionario bajo los dos primeros señalamientos de error carecen de fundamento.

██ La segunda cuestión que levanta es que el tribunal inferior erró al declararle culpable con el testimonio único del Teniente José A. López Vélez, cuando éste en ningún momento declaró que en Guaynabo hubiese ocurrido una alteración de la paz, y aún menos un motín, como consecuencia de la conducta imputada por la denuncia al acusado. A grandes rasgos el testimonio de este testigo fué al efecto de que el 31 de octubre de 1950 prestaba servicios en el pueblo de Guaynabo, teniendo sus policías destacados frente al cuartel armados de carabina y estando el pueblo en estado de alarma con motivo de ciertos ataques a los cuarteles; que como a las tres y media de la mañana recibió un mensaje al efecto de que un grupo de personas hablaban de atacar el cuartel; que en unión a dos o tres policías se dirigió entonces al sitio donde estaban esas personas y al acercarse ellos éstas comenzaron a dispararles, respondiendo ellos al fuego; que como se decía que esas personas tenían sus armas en el club de Corretjer,

decidieron abrir dicho club y al hacerlo no encontraron armas, pero sí ocuparon cierto material subversivo del Partido Nacionalista y ciertos documentos relacionados con Rusia y con la *masacre* de Ponce; que como a las seis de la mañana vió venir a Corretjer caminando hacia el cuartel, seguido de un gran número de personas; que al llegar éstos como a treinta o treinta y cinco metros del cuartel los policías armados que el testigo tenía los detuvieron, informando entonces Corretjer a la policía que quería hablar con el testigo, y la policía le dió paso; que Corretjer pidió permiso para entrar al cuartel y desde el balcón él le indicó que dijera lo que deseaba, pidiéndole entonces Corretjer que le informara qué había pasado que habían mandado bajar la bandera Nacionalista en su club e izado la bandera americana; que contestó a Corretjer que él había sido quien había hecho eso; que Corretjer se incomodó y dijo que "esos eran abusos de la policía, que él iba a reunir su gente para acabar con este gobierno abusador;" que "era un abuso de la policía y que este gobierno había que acabar con él de alguna manera y que había que hacer en Guaynabo lo mismo que se había hecho en Arecibo, Utuado y Jayuya;" que esas manifestaciones Corretjer se las hacía al grupo en voz alta, "en tono molesto, en forma hostil, de modo que estaba un hombre que se veía que estaba violento;" que Corretjer decía que había que atacar y quemar el cuartel de Guaynabo y hacer lo mismo que se había hecho en otros pueblos. (¹¹) (¹²)

¿Basta la evidencia enunciada para que el delito imputado al peticionario quedara probado? Creemos que sí. El tribunal inferior dió crédito a la declaración del Teniente López Vélez. No puede decirse que al así hacerlo cometiera manifiesto error. Al llegar a la conclusión de que el acusado se

---

(¹¹) Este Tribunal toma conocimiento judicial de los sucesos ocurridos en esta Isla durante la semana del 30 de octubre de 1950. *Guadalupe* v. *Bravo, Alcaide,* 71 D.P.R. 975, 980.

(¹²) El acusado presentó varios testigos, todos los cuales negaron que Corretjer se hubiera expresado en la forma indicada, pero a éstos el tribunal inferior no dió crédito.

había expresado y comportado en la forma indicada, el tribunal pudo concluir que el consejo dado llevaba en sí mismo, en sus propias entrañas, el fuego del delito, la perversidad del crimen y era capaz de incitar a actuar a sus acompañantes. Estamos de acuerdo. Una alteración de la paz o un motín, como resultado de ese consejo, no era necesario que siguieran para que el delito imputado quedara consumado.

*Debe anularse el auto expedido, cancelarse la fianza prestada y ordenarse la encarcelación del peticionario.*

El Juez Asociado Sr. Snyder se inhibió.

Opinión disidente del Juez Presidente Interino Sr. Todd, Jr.

Disiento. Considero que el caso de *El Pueblo* v. *Dessús et al.*, 12 D.P.R. 342, interpretando el artículo 47 del Código Penal[1] fué erróneamente resuelto y, no obstante haber sido ratificado en los de *El Pueblo* v. *Pillot García*, 26 D.P.R. 557 y *El Pueblo* v. *Echevarría*, 29 D.P.R. 884 (ya en forma modificada), no debe perpetuarse el error cometido. Estoy en un todo de acuerdo con la opinión disidente del Juez Asociado Sr. Wolf, en la cual concurrió el Juez Asociado y luego Presidente Sr. Hernández, en la cual se expresó, en parte, así:

". . . El verdadero significado del estatuto *es que algún crimen se haya cometido.* Las palabras *'en la comisión'* no son susceptibles de ninguna otra interpretación. A más de esto, nadie puede ayudar a la comisión de un delito sin cometer también un delito. Las palabras *'aconseje o ayude'* se usan *de igual manera en la sentencia,* por lo tanto, si se formula una acusación con arreglo a esta sección, *necesariamente debe presuponerse la ejecución por otro u otros, de algún acto,* estando en la mente de los acusados la intención y el propósito de aconsejar el acto.

"La sección 47 más bien parece tratar de la pena con que se castiga un *misdemeanor* que no de su definición, siendo dicha sección una repetición de la 36, en la que puede verse que lo que la Legislatura tuvo presente fué la 'comisión de un delito.'

---

[1] El artículo 47 del Código Penal dispone:

"Si declarado *'misdemeanor',* determinado acto, no hubiere pena expresamente señalada en la ley por aconsejar o ayudar a su comisión, toda persona que aconsejare o ayudare a otra en la comisión de dicho acto, incurrirá en *'misdemeanor'.*"

"La sección 47 se encuentra en nuestros estatutos en el capítulo que trata de 'Partícipes en los Crímenes.'

"Por la teoría de que la sección 47 define como crimen la incitación al crimen, la incitación que tiene lugar con arreglo a dicha sección sería aplicable solamente a un *misdemeanor;* el incitar la comisión de un *felony* no está en absoluto definido en el Código Penal. De modo que, el efecto de interpretar esta sección en el sentido de que una incitación para que se cometa un delito es punible por sí, nos llevaría a la conclusión de que una persona que aconseja a otra para que ésta agolpee o pegue a una tercera persona, podría ser castigada, pero no habría pena prescrita por incitar a cometer un asesinato. Esto prueba por sí mismo que no fué la intención de la Legislatura, al aprobar el Código Penal, hacer que la sección 47 definiera el delito sustantivo de una incitación a que se cometa un crimen.

"Todas las autoridades están acordes en que la incitación a la comisión de un delito constituye por sí un delito independiente y sustantivo. Algunos de éstos eran castigados y otros no por la Ley Común, *que constituye una razón mayor, porque una ley, cuyo objeto es definir tal delito debía definirlo de una manera clara e inequívoca.* Así se ha hecho en las leyes de diferentes localidades que definen una incitación especial para la comisión de un delito. La sección 47 trae a mi mente la misma idea que la 36, que cuando se ha cometido un crimen las personas que ayudan o aconsejan 'su comisión' pueden ser castigadas por cometer un *misdemeanor.* La tentativa de ambas secciones es hacer desaparecer la diferencia entre cómplices antes del hecho y principales, y no hacer diferencia con respecto a la pena." (Bastardillas nuestras.)

La opinión de la Corte en *El Pueblo* v. *Dessús,* supra, escrita por el Juez Asociado Sr. MacLeary, está basada, en su totalidad, en citas de casos interpretativos del derecho común y los cuales aplicó a la interpretación que dió al artículo 47 de nuestro Código Penal. No contiene dicha opinión cita de caso alguno interpretando el artículo 659 del Código Penal de California, igual al artículo 47 del nuestro, en el cual se le haya dado tal interpretación. No es, como se dice en la opinión del Juez Asociado Sr. Marrero en el presente caso, que "No hemos hallado un solo caso que resuelva lo contrario",

sino que la realidad es que no ha podido citarse, ni hemos encontrado, ningún caso de California sosteniendo la doctrina del caso de *El Pueblo* v. *Dessús*, supra, que ahora se ratifica de nuevo.

No importa que en el derecho común no se requiriera que el acto delictivo se hubiera consumado para que su instigación fuera penable. Nuestra ley requiere que el acto se haya consumado.

No interpreto las palabras citadas del caso de *Schenck* v. *Hirshfeld*, 22 Cal.App. 709, 136 Pac. 725, en el sentido restringido que se les da en la opinión de la Corte. El hecho de que en dicho caso se tratara de una situación en que se demostró que una persona había ayudado a otra en la comisión de un delito, no significa que dicho caso sea autoridad para sostener que la corte le estaba dando la misma interpretación al artículo 659 del Código Penal de California que la que le había dado este Tribunal años antes al artículo 47, supra, en sus dos modalidades de ayudar o aconsejar. El caso de *Schenck* no resuelve en forma alguna que cuando de aconsejar la comisión de un delito se trata no sea necesario que el delito se haya cometido.

Considero, además, que el artículo 47, supra, no constituye una mera repetición del artículo 36 del Código Penal. Este último establece quiénes son principales o autores, incluyendo a los que hubieran aconsejado *su comisión o incitado a ella;* y aquél establece la pena para los casos *"misdemeanor"* que no tengan pena expresamente establecida, por aconsejar o ayudar a su comisión.

El hecho de que al artículo 47 sigan los artículos del Código Penal que envuelven tentativas, o sea en que la persona ha tratado de cometer un delito sin lograr realizarlo, tampoco implica que el propósito del legislador fué castigar el aconsejar la comisión de un delito sin que éste se hubiera cometido. Y esto es así, porque basándose la doctrina establecida en *El Pueblo* v. *Dessús*, supra, en los casos resueltos bajo el derecho común, en la generalidad de éstos se sostiene que la

incitación a cometer un delito no constituye una tentativa de cometerlo precisamente porque el delito no se ha cometido. 1 Burdick, *Law of Crime*, sec. 106, pág. 117. ¿Qué tentativa de cometer un delito puede existir por el mero hecho de aconsejarse su comisión, si el delito no se cometió por la persona aconsejada? Como dice Burdick: "Cuando una instigación es aceptada por la persona aconsejada y ésta realiza algún acto con el fin de realizar el delito, se ha cometido una tentativa, y ambas partes son responsables. En igual forma, si una instigación a cometer un *'felony'* resulta en su comisión, entonces el incitador es un cómplice (*accessory*) antes del hecho." Es por esto que el Juez Asociado Sr. Wolf en su opinión disidente en el caso de *Dessús*, sostuvo, con razón a mi juicio, que "La tentativa de ambas secciones [arts. 36 y 47] es hacer desaparecer la diferencia entre cómplices antes del hecho y principales, y no hacer diferencia con respecto a la pena."

Al mismo efecto, Dangel, en su reciente obra *Criminal Law* (1951), pág. 224, después de reiterar que el "*solicitation*" o instigación a cometer un delito, aun cuando éste no se cometa, constituye un delito independiente en el derecho común, dice: "Un 'incitador' (*solicitor*) se distingue de un 'cómplice antes del hecho' en que la comisión del crimen contemplado no es necesaria en la incitación (*solicitation*), pero es esencial para establecer el *status* de cómplice antes del hecho. La incitación es también distinguible de tentativa criminal. La primera es un paso preliminar en la dirección del crimen contemplado; la última es un acto intencional tendente directamente hacia su comisión. El peso de las autoridades no conceptúa la incitación como un acto suficiente para constituir una tentativa. Usualmente es oral mientras que una tentativa es física. . . ."

En resumen, nos encontramos, como hemos dicho anteriormente, ante un artículo tomado del Código Penal de California el cual, en la modalidad aquí envuelta, aparentemente no ha sido objeto de interpretación en dicho estado. En

Puerto Rico, desde hace 44 años, este Tribunal, por mayoría de tres a dos, se ha interpretado que el mero consejo a que se refiere el artículo 47, sin ulterior consecuencia alguna, crea un delito. Con el respeto que me merece el criterio de todos los Jueces que en tal forma han opinado en el pasado y el de los que ahora opinan en igual forma, y no obstante que la división que ahora existe en el Tribunal, debido a una vacante y una inhibición, es más significativa, no puedo convenir con dicha interpretación. A mi juicio procedería una actuación legislativa definiendo claramente el delito, si fué su intención crearlo, y al así hacerlo tomar en consideración el hecho de que bajo la doctrina del caso de *Dessús*, ahora ratificada, el aconsejar la comisión de un delito *"felony"*, cuando éste no se comete, no constituye delito en Puerto Rico.

Limitado mi disenso a la cuestión legal discutida, no expreso opinión en cuanto a si la prueba de cargo fué suficiente de acuerdo con la regla modificada establecida en el caso de *El Pueblo* v. *Echevarría*, supra. Es de notarse, sin embargo, que el tercer error señalado, cónsono con los anteriores, lo que plantea es que dicha prueba no demostró que hubiese ocurrido una alteración de la paz y, aún menos, un motín, como consecuencia de la conducta imputada al apelante.

Por las razones expuestas, debería revocarse la sentencia.