GILBERTO RODRÍGUEZ RODRÍGUEZ, demandante y recurrente, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Número:* RE-89-325 *Resuelto:* 4 de junio de 1992

566

*Harry N. Padilla Martínez*, abogado del recurrente; *Jorge E. Pérez Díaz, Procurador General, y Anabelle Rodríguez, Procuradora General Auxiliar*, abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

En el presente recurso de apelación se cuestiona la constitucionalidad de la Ley Núm. 34 de 19 de junio de 1987, que enmienda el Art. 4 de la Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2204) a los efectos de excluir de la jurisdicción del Tribunal de Menores aquellos casos en que se le impute a un menor, que hubiese cumplido catorce (14) años de edad, la comisión de hechos constitutivos del delito de asesinato.[1]

I

El 11 de enero de 1989 se presentó contra el menor apelante una denuncia por el delito de asesinato en primer grado y dos (2) denuncias por infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y

---

[1] El 11 de julio de 1991 se aprobó la Ley Núm. 19, la cual enmienda la Ley Núm. 34 de 19 de junio de 1987 (34 L.P.R.A. sec. 2203), a fin de aumentar la edad mínima a quince (15) años. Dicha enmienda no afecta el caso de autos debido a que el menor Gilberto Rodríguez Rodríguez tenía quince (15) años al momento de ocurrir los hechos.

418, respectivamente. El menor apelante tenía quince (15) años al momento de ocurrir los hechos. Las denuncias fueron presentadas en el Tribunal de Distrito, Sala de San Germán, y posteriormente fueron referidas a la Sala de Mayagüez para la celebración de la correspondiente vista preliminar.

El 31 de enero de 1989 el aquí apelante presentó en el tribunal de instancia una demanda de sentencia declaratoria impugnando la constitucionalidad de la Ley Núm. 34, *supra*. El 18 de mayo de 1989 el tribunal la declaró sin lugar y sostuvo la validez de la mencionada ley.

Inconforme con ese dictamen, el apelante recurre ante nos.

## II

Tenemos ante nuestra consideración una disposición estatutaria establecida mediante acción legislativa en función del principio de legalidad del Art. 8 del Código Penal de Puerto Rico, 33 L.P.R.A sec. 3031.[2] Este Tribunal ha señalado, como axioma elemental, que la Asamblea Legislativa tiene la facultad exclusiva de tipificar los delitos e imponer castigos. *Pueblo v. Martínez Torres*, 116 D.P.R. 793, 796 (1986); *Pueblo v. Lucret Quiñones*, 111 D.P.R. 716 (1981); *Meléndez v. Tribunal Superior*, 90 D.P.R. 656 (1964); *Corretjer v. Tribl. de Distrito*, 72 D.P.R. 754 (1951); *Pueblo v. Escambrón Beach Club*, 63 D.P.R. 761 (1944). La Asamblea Legislativa está limitada, únicamente, por los preceptos constitucionales. *Pueblo v. Reyes Morán*, 123 D.P.R. 786 (1989); *Pueblo v. Pérez Zayas*, 116 D.P.R. 197 (1985); *Pueblo v. Martínez Torres*, supra; *Pueblo v. Lucret*

---

[2] El principio de legalidad establece que "[n]o se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubier[a] previamente establecido". Además, que "[n]o se podr[ía]n crear por analogía delitos, penas, ni medidas de seguridad". Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031.

*Quiñones*, supra; *Pueblo v. Hickock of P.R., Inc.*, 78 D.P.R. 392 (1955).

Pasemos, pues, a examinar cada una de las disposiciones constitucionales en que se apoya el apelante a fin de determinar si las mismas fueron violadas por la Asamblea Legislativa, según se alega.

## III

La Sec. 15 de nuestra Carta de Derechos establece, en su segundo párrafo, que "[n]o se permitirá el ingreso de un menor de dieciséis años en una cárcel o presidio". Art. II, Sec. 15 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 327. Arguye el apelante que la Ley Núm. 34, *supra*, es contraria a esta sección del Art. II de nuestra Constitución porque, en caso de resultar culpable del delito de asesinato, tendría que ser sentenciado a pena de reclusión, lo cual infringiría la mencionada cláusula.

Cuando nos toca interpretar la Constitución debemos considerar no sólo el sentido literal de sus disposiciones, sino también los antecedentes y las fuentes de las cuales fue tomado el texto. *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328, 341–343 y 355–357 (1983).

La prohibición constitucional antes mencionada no tiene contraparte en la Constitución federal ni su procedencia aparece explicada en el Diario de Sesiones de la Convención Constituyente. La Sec. 15 del Art. II de la Carta de Derechos, *supra*, fue incorporada por iniciativa de la delegación socialista, que la había formulado en el Art. II, Sec. 18 y en el Art. III, Sec. 10 de su Proposición 94; es decir, su anteproyecto de la Constitución. J. Trías Monge, *Historia Constitucional de Puerto Rico*, San Juan, Ed. U.P.R., 1982, Vol. III, pág. 199; 4 Diario de Sesiones de la Convención Constituyente 2371 y 2374 (1952). Dicha cláusula fue presentada por el señor Paz Granela y fue apro-

bada sin reservas ni discusiones ulteriores en cuanto a su alcance. 3 Diario de Sesiones de la Convención Constituyente 1590–1591 (1952). En vista de ello, para considerar el argumento del apelante, es menester examinar brevemente el desarrollo histórico del enjuiciamiento de menores en Puerto Rico, para indagar su relación con la aprobación de la disposición constitucional en cuestión.

El 11 de marzo de 1915, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 37, conocida como la Ley de Cortes para Niños o Cortes Juveniles, que estuvo vigente hasta 1955 (34 L.P.R.A. ants. secs. 1941–1973). La misma creó un sistema de tribunales para conocer "en todo caso de delincuencia y necesidad[es] juveniles y causas a ellas conducentes ...". 1915 Leyes de Puerto Rico 73.

La Ley Núm. 37, *supra*, contrario a la Ley Núm. 97 de 23 de julio de 1955 (34 L.P.R.A. ants. secs. 2001–2015) y a la Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2201 *et seq.*), reconocía la capacidad de los menores de dieciséis (16) años para cometer delitos y proveía para que éstos fueran procesados criminalmente. También señalaba las garantías o los derechos que tenía el menor cuando se le acusara de un delito grave. La legislación aludida no establecía restricciones de edad mínima en la cual un menor podía ser procesado criminalmente, pero estaba limitada a esos fines por las disposiciones del Art. 39 del Código Penal de 1937, que disponía que no era capaz de cometer crimen un niño mayor de siete (7) años y menor de catorce (14) "cuando no exist[iera] prueba plena de que al tiempo de cometer el acto de que se l[e] acusa[re] tení[a] conciencia de su maldad". 33 L.P.R.A. ant. sec. 85(2). Es decir, sólo existía una presunción rebatible de inimputabilidad para el menor de catorce (14) años.

La Ley Núm. 37, *supra*, proveía, además, que un menor de dieciséis (16) años de edad no podía ser encarce-

lado en una cárcel común, en compañía de adultos, salvo en determinadas excepciones.(³) En *Ex parte Castro*, 54 D.P.R. 772 (1939), este Tribunal se enfrentó a un planteamiento sobre la procedencia de una sentencia de encarcelamiento de un menor de dieciséis (16) años. Interpretando la Ley Núm. 37, *supra*, resolvimos que las circunstancias justificaban aplicar la excepción que permitía encarcelar al menor, y no se invalidó la sentencia criminal.

■ Como puede apreciarse de una lectura integral de la Ley Núm. 37, *supra*, y su jurisprudencia, hasta el 1952 no había prohibición alguna a imponer pena de reclusión a un menor de dieciséis (16) años de edad. La prohibición se refería más bien al *modo de ejecutar la pena*. Los menores de catorce (14) años o más eran procesables criminalmente por cometer delitos, sin excepción alguna. La Ley de Cortes para Niños o Cortes Juveniles de 1915 tan sólo proveía un procedimiento especial para juzgarlos y para poner en vigor las penas que se le fijasen. El propósito de la mencionada prohibición era evitar la influencia adversa que pudiese tener el ofensor adulto sobre el menor durante la reclusión. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 10.2.3, pág. 316. Aunque el menor era juzgado como tal, se le podía imponer pena de cárcel o pre-

(³)
"Sección 23. — Todas las penas y castigos impuestos por la ley o por ordenanzas municipales a una persona por cualquier delito o falta serán aplicadas discrecionalmente por las Cortes para Niños, y la ejecución de cualquier sentencia podrá dejarse sin efecto o suspenderse por la Corte. Ningún niño menor de diez y seis años de edad será encarcelado en una cárcel común, en la compañía de criminales adultos confinados en la misma, sino que, en el caso de que su encarcelación se hiciere absolutamente necesaria, ésta se verificará en un lugar separado de los criminales adultos, en forma tal que resulte imposible que el niño se asocie con ellos, o que éstos puedan ejercer influencia sobre aquél. 1915 Leyes de Puerto Rico 79.

"Sección 31. — En ninguna circunstancia, podrá encarcelarse, a no ser por orden de la Corte, a un niño menor de diez y seis años de edad en ninguna prisión, cárcel común o depósito, y cualquier funcionario o persona que infringiese esta disposición de ley será culpable de delito menos grave (*misdemeanor*), y será castigado con multa no excedente de veinticinco dólares, o prisión en la cárcel de distrito por un período máximo de quince días o ambas penas." 1915 Leyes de Puerto Rico 81–82.

sidio, pero la misma se extinguía en cualquier institución pública o privada que no fuese una cárcel o presidio.

■ En 1952, cuando se aprobó la Constitución del Estado Libre Asociado, la Ley de Cortes para Niños o Cortes Juveniles y la jurisprudencia antes citada constituían el derecho vigente. Siendo ello así, podemos concluir, sin temor a equivocarnos, que éstas fueron la fuente de la propuesta de la delegación socialista a la Convención Constituyente. Como bien señala el apelante, al redactar la Carta de Derechos la Convención Constituyente pretendió expandir los derechos y las garantías individuales reconocidas entonces. La Sec. 15 de la Carta de Derechos, *supra*, es ejemplo de ello. Al adoptar el derecho vigente como parte de la Constitución, la Convención Constituyente elevó un derecho estatutario de los menores a rango constitucional. Además, eliminó las excepciones existentes mediante las cuales el menor podía ser encarcelado en instituciones de adultos. Sin embargo, *la ampliación del derecho de los menores no llegó al punto de prohibir que pudieran ser procesados criminalmente*. Ello surge claramente no sólo del tenor mismo del texto de la aludida Sec. 15, que trata únicamente del *encarcelamiento* de menores y nada dice sobre su *procesamiento*, sino, además, de la actuación legislativa posterior a la adopción de la Constitución.

■ El 24 de julio de 1952, la Asamblea Legislativa aprobó, de manera urgente, la Ley Núm. 21 (34 L.P.R.A. ants. secs. 1963 y 1971), enmendando la Ley Núm. 37, *supra*, a fin de eliminar las excepciones contenidas en sus Secs. 23 y 31 que permitían que un menor pudiese ser *encarcelado* en una institución de adultos, de manera que las mismas fueran cónsonas con el nuevo estado de Derecho propiciado por la vigencia de la Constitución. Si el propósito de la Convención Constituyente hubiese sido el prohibir el *procesamiento* de un menor como adulto, o sea, procesarlo criminalmente, la Asamblea Legislativa hubiese

tenido que derogar o enmendar la Ley Núm. 37, *supra*, a tales efectos también, pero no lo hizo. La Asamblea Legislativa, cuando aprobó las enmiendas a las Sec. 23 y 31 de dicha ley, tuvo presente y reconoció que la nueva disposición constitucional lo que prohibía era la forma y manera de encarcelar que en su origen permitía la Ley Núm. 37, *supra*, y no el procesamiento criminal.

Por todo lo anterior, concluimos que, a tenor con la Sec. 15 del Art. II de la Carta de Derechos de nuestra Constitución, *supra*, un menor de catorce (14) años o más puede ser procesado como adulto y sentenciado a reclusión siempre que éste no sea encarcelado en una institución de adultos antes de cumplir los dieciséis (16) años de edad.

El encarcelamiento del menor en una institución diferente no constituye una excepción en nuestro ordenamiento jurídico. El Art. 40 del Código Penal de 1974 (33 L.P.R.A. sec. 3202) dispone que: "La pena de reclusión consiste en la privación de libertad en la *institución adecuada* durante el tiempo señalado en la sentencia." (Énfasis suplido.) Por lo tanto, el Tribunal no está impedido ni actúa *ultra vires* si ordena el cumplimiento de la sentencia en una institución que no pertenezca a la Administración de Corrección y que se considere *adecuada* según las circunstancias del caso.

## IV

Analicemos ahora las disposiciones de la Ley Núm. 34, *supra*, a la luz de las cláusulas constitucionales del debido proceso de ley.

Nuestra Constitución dispone, en la Sec. 7 del Art. II, que "[n]inguna persona será privada de su libertad o propiedad sin [el] debido proceso de ley ...". Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 275. Esta disposición constitucional tiene su contraparte y modelo en

las Enmiendas V y XIV de la Constitución federal, L.P.R.A., Tomo 1. *Rivera Santiago v. Srio. de Hacienda,* 119 D.P.R. 265, 273 (1987). Debemos hacer referencia a la interpretación que se le ha dado a las aludidas disposiciones constitucionales federales porque tenemos ante nos una cuestión novel que este Tribunal no había examinado antes, y por ende, la interpretación de las disposiciones originales de la cuales las nuestras fueron tomadas es muy pertinente. *Belaval v. Srio. de Hacienda* 83 D.P.R. 251 (1961); *Pueblo v. Matos,* 83 D.P.R. 335 (1961); *Reyes v. Tribunal Superior,* 84 D.P.R. 29 (1961); *Rivera Escuté v. Jefe de Penitenciaría,* 92 D.P.R. 765 (1965); *Peña Clos v. Cartagena Ortiz* 114 D.P.R. 576, 588 (1983); *López Vives v. Policía de P.R.,* 118 D.P.R. 219, 226 (1987). Más importante aun, estamos constitucionalmente comprometidos a interpretar nuestras disposiciones para darles, al menos, el mismo contenido que tienen las cláusulas federales. *Pueblo v. Figueroa,* 77 D.P.R. 188 (1954); *Pueblo v. Dolce,* 105 D.P.R. 422 (1976); *E.L.A. v. Coca Cola Bott. Co.,* 115 D.P.R. 197, 205 (1984).

La cláusula del debido proceso de ley de la Constitución federal, en la cual se funda la nuestra, procura prevenir que el Gobierno abuse de sus poderes, que los utilice como instrumentos de opresión, *Davidson v. Cannon,* 474 U.S. 344, 348 (1986), o que los ejerza de forma arbitraria en perjuicio del individuo, *Daniels v. Williams,* 474 U.S. 327, 331 (1986). Según se ha conceptualizado, el debido proceso de ley se manifiesta en dos (2) dimensiones distintas: la sustantiva y la procesal. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1984).

En el presente recurso de apelación se impugna la validez constitucional de la Ley Núm. 34, *supra,* bajo ambas vertientes de la cláusula del debido proceso de ley. En síntesis se nos señala que el ser procesado como un menor es un derecho fundamental y que, al requerírsele a un menor

de dieciséis (16) años ser juzgado como adulto, era necesaria la celebración de una vista evidenciaria donde el menor pudiese demostrar que su bienestar y el de la comunidad requerían que se le procesase como menor y no como adulto.

No le asiste la razón al recurrente bajo ninguna de las dos (2) vertientes de debido proceso de ley.

■■■ La vertiente sustantiva del debido proceso de ley, tanto en Puerto Rico como en Estados Unidos, persigue proteger y salvaguardar los derechos fundamentales de la persona. *Rivera Santiago v. Srio. de Hacienda*, supra; *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983); *U.S. v. Carolene Products*, 304 U.S. 144, 152–153 (1938). Por lo tanto, debemos iniciar nuestro análisis indagando si se ha reconocido algún derecho fundamental *por razón de edad*; es decir, si al menor le ampara algún derecho fundamental por su condición de menor.

■■■ El ordenamiento constitucional federal ha reconocido como derechos fundamentales aquellos derechos expresamente consagrados en la Primera Enmienda, además de seis (6) categorías adicionales reconocidas judicialmente como derechos implícitos:

> First, *the freedom of association* has been found to be a fundamental value which is implied by the first amendment guarantees even though it has no specific textual recognition in that amendment. Second, the *right to vote* and to participate in the electoral process has been held to be a fundamental constitutional value which is reflected in several amendments and given recognition as a form of "liberty" under the due process clauses. Third, the Court has found a *fundamental right to interstate travel*; this right to travel has a long history of recognition as a right to personal mobility, a right derived from several provisions of the Constitution. Fourth, the Court has implicitly recognized a *right to fairness in the criminal process* as a fundamental right although its "fundamental" nature has not been the subject of a specific decision. Fifth, the Supreme Court has recognized that there is a right to fairness *in procedures con-*

*cerning individual claims against governmental deprivations of life, liberty, or property.* Again, this right is not reflected in a specific decision but is, rather, an implied recognition of the fundamental nature of the due process clause in those decisions dealing with "procedural due process" rights. Sixth, there is a *fundamental right to privacy* which includes various forms of freedom of choice in matters relating to the individual's personal life. This right to privacy has been held to include rights to freedom of choice in marital decisions, child bearing, and child rearing. (Énfasis suplido y escolios omitidos.) 2 *Rotunda, Nowak and Young, Constitutional Law* Sec. 15.7, págs. 84–85 (1986).

La Constitución del Estado Libre Asociado, en su Carta de Derechos, también reconoce expresamente determinados derechos fundamentales del individuo. A modo ejemplificativo podemos señalar los derechos siguientes: la igualdad ante la ley (Sec. 1), el derecho al voto (Sec. 2), la libertad de culto (Sec. 3), la libertad de expresión (Sec. 4), el derecho a la vida (Sec. 7), el derecho a protección de ley contra ataques abusivos a la honra y el derecho a la intimidad (Sec. 8). Estos derechos, además de ser garantizados constitucionalmente, han sido reconocidos como fundamentales e inherentes al ser humano. *González v. Ramírez Cuerda*, 88 D.P.R. 125 (1963); *Aponte Martínez v. Lugo*, 100 D.P.R. 282 (1971); *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734 (1975); *Colón v. Romero Barceló*, 112 D.P.R. 573 (1982); *Puerto Rico Tel. Co. v. Martínez*, 114 D.P.R. 328 (1983); *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986).

La posición asumida por el apelante, a los efectos de que el ser procesado como menor es un derecho fundamental, es insostenible. De un minucioso examen de la Constitución federal y de la Constitución del Estado Libre Asociado de Puerto Rico y sus interpretaciones, no se desprende derecho fundamental alguno que cobije el reclamo del apelante. No hay nada en el texto o en el historial de las cláusulas constitucionales pertinentes ni en la jurispru-

dencia aplicable que justifique dicho reclamo. Tampoco existen consideraciones extraordinarias de orden público que permitan inferir el derecho reclamado. Siendo ello así, no puede resolverse que la Ley Núm. 34, *supra*, viola la cláusula de debido proceso de ley en su aspecto sustantivo. *People v. J.S.*, 469 N.E.2d 1090, 1094 (1984); *State v. Huntley*, 438 So. 2d 1188, 1192 (1983).

En su vertiente procesal, la cláusula del debido proceso de ley le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que en esencia sea justo y equitativo, que respete la dignidad de los individuos afectados. *López Vives v. Policía de Puerto Rico*, supra. La validez de la ley, en términos sustantivos, no es pertinente a los fines de evaluar si cumple con el debido proceso de ley procesal. *Rotunda, Nowak and Young*, supra, Sec. 14.6.

Para que entre en vigor la protección que ofrece este derecho en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274. Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido (*what process is due*). *Rivera Santiago v. Srio. de Hacienda*, supra; *Cleveland Board of Education v. Loudermill*, supra; *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial. *Rivera Santiago v. Srio. de Hacienda*, supra; *Rotunda, Nowak and Young*, supra, Sec. 17.8.

En el presente caso evidentemente no se alude a ningún tipo de interés de propiedad. Lo que se reclama es

un interés de libertad, en su modalidad física. En cuanto a este interés del menor, cabe señalar que, aun cuando la consecuencia ulterior de aplicarle la Ley Núm. 34, *supra*, sea la privación de su libertad, su interés no está indebidamente afectado. En el procesamiento criminal como adulto disfrutará de todas las garantías pertinentes, incluyendo una vista en su fondo. Tendrá ahí el debido proceso a que tiene derecho para proteger su interés de libertad, por lo que la vista evidenciaria reclamada no procede.

Debe quedar claro que no estamos aquí ante una situación de renuncia discrecional de jurisdicción sobre el menor, donde un juez del Tribunal de Menores, a base de su mejor criterio, lo excluye de su competencia y lo transfiere a otro foro para que el menor sea juzgado como adulto. En tales casos, aplica lo señalado en *Kent v. United States* 383 U.S. 541 (1966), donde el Tribunal Supremo de Estados Unidos, refiriéndose a la renuncia de jurisdicción, dijo que ésta era la medida más drástica que tiene disponible el Tribunal de Menores y que por eso era necesario que se cumplieran determinadas exigencias procesales que protegiesen al menor ante la discreción del juez.

Lo que tenemos ante nos es una situación, no de renuncia discrecional, sino de *exclusión legislativa*, donde la ley taxativamente dispone que los menores de catorce (14) años o más que hayan sido acusados de asesinato serán transferidos para juicio al sistema de justicia criminal de adultos. No hay ejercicio alguno de discreción. J.L. Morán, *Sistema de justicia juvenile, exclusión de jurisdicción, renuncia de jurisdicción*, 49 Rev. Col. Abo. P.R. 105, 112 (1988); B.C. Feld, *Reference of Juvenile Offenders for Adult Prosecution: The Legislative Alternative to Asking Unanswerable Questions*, 62 Minn. L. Rev. 515 (1978).

No tiene razón el apelante al señalar que lo resuelto en *Kent v. United States*, supra, es de aplicación al caso de autos. Las razones que llevaron al Tribunal Supremo a re-

conocer las salvaguardas procesales de la referida cláusula constitucional en *Kent v. United States*, supra, no están presentes cuando la ley, como en nuestro caso, no confiere a los jueces discreción alguna a ejercer. Ante un planteamiento idéntico al de autos en *State v. Perique*, 439 So. 2d 1060, 1064 (1983), se indicó:

> The situation in the case at bar, however, is easily distinguishable from that in *Kent*. In this case, there are no statutory rights of which defendants are being deprived. Once ... charged ... the question is not one of "transfer" of jurisdiction. Rather, the juvenile court is automatically divested of jurisdiction. This divestiture is not a matter of discretion on the part of the juvenile court or the district attorney, but is controlled by the statute defining the jurisdiction of the juvenile courts ....

En igual sentido, véanse: *People v. Reed*, 465 N.E.2d 1040, 1042 (1984); *People v. J.S.*, supra, pág. 1095.

La exclusión legislativa en cuestión se justifica al hacer un balance de los intereses en conflicto. Los intereses del menor y los de la sociedad exigen que al menor se le procese como a un adulto en esas circunstancias. No podemos olvidar que, como dijéramos antes, el tribunal de adultos le proveerá un debido proceso de ley, con todas las garantías constitucionales habidas, para que de esta forma se proteja su interés de libertad.

Cabe señalar que los actuales Tribunales de Menores son criaturas legislativas y que, por lo tanto, la Legislatura, en función de su poder general de legislar para el bien común, puede variar la jurisdicción que le confirió en un momento histórico por aquella que refleje la realidad y las necesidades sociales del momento. *People v. Robert Z.*, 511 N.Y.S.2d 473, 476 (1986).

## V

El apelante cuestiona la constitucionalidad de la ley, bajo las cláusulas de igual protección de las leyes. Alega

que se ha establecido por la Ley Núm. 34, *supra*, una clasificación ilegal basada en la edad del menor y en la naturaleza del delito imputado. No tiene razón el apelante.

■ El principio constitucional de la igual protección de las leyes no exige que se dé un trato igual a todos los ciudadanos siempre. *Pueblo v. Matías Castro*, 90 D.P.R. 528, 531 (1964); *Zachry International v. Tribunal Superior*, 104 D.P.R. 267 (1975); *Alicea v. Córdova*, 117 D.P.R. 676, 696 (1986). El Estado puede hacer clasificaciones entre las personas sin infringir dicho principio siempre y cuando la clasificación sea razonable y con miras a la consecución o protección de un interés público legítimo. *Zachry International v. Tribunal Superior*, supra, pág. 277; *Legislative Purpose, Rationality and Equal Protection*, 82 Yale L. J. 123, 130–141 (1972). La existencia de una clasificación no implica, per se, que ha habido una violación a dicho principio constitucional. *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 D.P.R. 248, 260 (1980). Lo que este principio hace es prohibir que el trato desigual sea injustificado o que la clasificación sea irrazonable.

■ Nuestro ordenamiento jurídico ha adoptado dos tipos de escrutinios para examinar la razonabilidad de las clasificaciones. Estos son el escrutinio estricto y el escrutinio tradicional, deferencial o de nexo racional. *Zachry International v. Tribunal Superior*, supra, pág. 277.

■ El escrutinio estricto impone el nivel más riguroso de revisión de la legislación impugnada. Según este criterio, la clasificación se presume inconstitucional. El Estado tiene la obligación de demostrar la existencia de un interés público apremiante o de superior jerarquía que justifique la clasificación y que la misma promueva necesariamente la consecución de ese interés. *Zachry International v. Tribunal Superior*, supra, págs. 277–278. Este criterio es generalmente utilizado cuando una ley establece una cla-

sificación inherentemente sospechosa o cuando se afectan derechos fundamentales. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1988, Vol. II, pág. 1198. En *Wackenhut Corp. v. Rodríguez Aponte*, 100 D.P.R. 518, 531 (1972), señalamos' que están sujetas a un minucioso examen judicial, por considerarse inherentemente sospechosas, todas las clasificaciones tangentes con la dignidad del ser humano y con el principio de la igualdad ante la ley. Caen bajo esta categoría las clasificaciones o discrímenes por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas, y nacionalidad. *Wackenhut Corp. v. Rodríguez Aponte*, supra. En el caso de autos evidentemente no hay una clasificación inherentemente sospechosa.

 Bajo el escrutinio tradicional o de nexo racional, una clasificación legislativa no debe ser declarada inválida o inconstitucional a menos que sea claramente arbitraria; esto es, que no exista un interés legítimo del Estado o que no pueda establecerse nexo racional alguno entre la clasificación y un interés estatal. Aplicando este criterio se ha resuelto que es constitucional una ley siempre que pueda concebirse razonablemente una situación de hechos que justifique la clasificación, teniendo el peso de la prueba aquel que alega la inconstitucionalidad de la legislación en controversia. *Zachry International v. Tribunal Superior*, supra, pág. 277.

 Por otro lado, este Tribunal ha establecido que cuando el planteamiento de inconstitucionalidad, bajo esta cláusula, se hace contra una legislación de tipo económico o social, el criterio tradicional mínimo sólo exigirá que la clasificación no sea arbitraria y que la misma pueda establecer un nexo racional con los propósitos del estatuto. *Marina Ind., Inc. v. Brown Boveri Corp.*, supra, pág. 81; *U.S. Brewers Assoc. v. Srio. de Hacienda*, 109 D.P.R. 456, 461 (1980).

■ Conforme a lo que resolviéramos anteriormente, aquí no está implicado ningún derecho fundamental, por lo que no es de aplicación el escrutinio estricto. Por otro lado, en *Pueblo en interés menor L.R.R.*, 125 D.P.R. 78 (1989), este Tribunal resolvió que no procedía un planteamiento de clasificación sospechosa por *edad* y catalogó el mismo como uno patentemente frívolo. Con exclusión de lo antes citado, no hemos encontrado nada en nuestra Constitución ni en la jurisprudencia que nos permita concluir que una clasificación basada en la edad o en la gravedad del delito pueda ser una clasificación sospechosa.

Por lo tanto, siguiendo los parámetros establecidos para el escrutinio tradicional y por los de este Tribunal en cuanto a legislación social, debemos concluir que la ley es constitucional. El planteamiento de arbitrariedad, por parte del apelante, es inmeritorio. La ley en cuestión es el producto de amplios estudios sociológicos sobre el particular y responde a los dramáticos cambios sociales ocurridos en Puerto Rico durante las últimas décadas. Esta ley tiene como fundamento el interés legítimo del Estado en "velar por el bienestar, la seguridad y la tranquilidad de toda la comunidad", según expresado en la Exposición de Motivos. 1987 Leyes de Puerto Rico 121.

Han sido muchos los esfuerzos gubernamentales para combatir el mal social que nos ocupa. El legislador advierte el impacto social que el incremento en la delincuencia tiene y reconoce la necesidad de establecer un balance entre los intereses del menor y los de la sociedad en general.

■ Mediante la aprobación de esta ley, el legislador tiene el propósito de proteger la ciudadanía de aquella conducta delictiva de naturaleza grave y violenta. Este es un objetivo público legítimo enmarcado dentro del poder de razón de Estado y los mecanismos utilizados para su consecución guardan un nexo racional con el objetivo perseguido.

Este Tribunal no puede hacer caso omiso a la realidad de que jóvenes de catorce (14) años de edad o más, con demasiada frecuencia, están siendo autores de delitos despiadados que ponen en riesgo el bienestar de las personas. De los informes y estadísticas considerados por la Asamblea Legislativa durante el proceso de aprobación de la Ley Núm. 34, *supra*, se desprende esta trágica realidad puertorriqueña en cuanto a la delincuencia juvenil.

De acuerdo con el informe que rindió al Senado la Comisión de lo Jurídico el 12 de mayo de 1987, sobre el P. del S. 1275 (Proyecto de la ley en cuestión), durante solamente los meses de enero a abril de 1987 se presentaron ciento veintidós (122) renuncias de jurisdicción mandatorias en la Sala de Menores del Tribunal Superior. De éstas, doce (12) renuncias fueron motivadas por la comisión de asesinatos. Durante el año fiscal 1985–1986, se presentaron cuarenta y un (41) querellas de asesinato en el Tribunal de Menores. Informe sobre el P. del S. 1275, pág. 7.

Durante el periodo comprendido entre el 19 de junio de 1987 al 18 de junio de 1989, en el cual ya estaba en vigor la Ley Núm. 34, *supra*, se registró un total de ochenta (80) casos de asesinato imputados a menores entre las edades de catorce (14) y diecisiete (17) años de edad. Informe de Conferencia Sustitutivo del Senado al P. de la C. 1368 de 30 de junio de 1991, pág. 3. Por otro lado, durante el periodo comprendido entre el 29 de junio de 1989 al 31 de marzo de 1991 se registró un total de setenta y un (71) casos de asesinato imputados a menores entre las edades antes señaladas.

A base de las estadísticas oficiales, el total de los setenta y un (71) asesinatos imputados a menores entre las edades de catorce (14) a diecisiete (17) años representan el 6.88% del total de mil treinta y dos (1,032) asesinatos que se registraron en Puerto Rico entre 1989 y 1991. Los ochenta (80) asesinatos imputados a los menores comprendidos en las mismas edades durante los dos (2) años anteriores re-

presentan el 7.5% del total de mil cincuenta y nueve (1,059) asesinatos cometidos en ese periodo.

Lo antes señalado refleja que la Ley Núm. 34, *supra*, no es una medida arbitraria, sino más bien un intento racional del legislador de atender un grave problema social. Responde a una necesidad, a una urgencia ante una situación de crisis social.

Por todo lo antes expuesto, *se anulará el auto, se dictará sentencia que confirme la sentencia de 18 de mayo de 1989 del tribunal de instancia y se devolverá el caso para que se continúen los procedimientos conforme a esta opinión.*

El Juez Asociado Señor Rebollo López disintió sin opinión escrita. El Juez Presidente Señor Andréu García no intervino.