# 2001 DTA 151

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN, PANEL III

ROSANA MEDINA PERAZA
Apelante-Recurrente

v.

AUTORIDAD DE EDIFICIOS PUBLICOS
Apelada-Recurrida

Núm. KLRA-00-00695

San Juan, Puerto Rico, a 20 de abril de 2001

Panel integrado por su Presidente, el Juez Ramón Negrón Soto,
y los Jueces Antonio J. Negroni Cintrón y Jorge Segarra Olivero

Negroni Cintrón, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

La recurrente, Sra. Rosana Medina Peraza, nos solicita que revoquemos la Resolución emitida el 3 de mayo de 2000 por la Junta de Apelaciones de la Autoridad de Edificios Públicos ("*Junta*") notificada el 6 de septiembre del mismo año. Mediante ésta, se desestimó la apelación presentada por ella, al concluir que las actuaciones de la Autoridad de Edificios Públicos ("*Autoridad*") fueron correctas, ya que la recurrente no cumplía con los requisitos mínimos de experiencia exigido por las convocatorias a los puestos solicitados por ella.

A requerimiento nuestro, la Autoridad presentó un alegato sobre los méritos del recurso, por lo que estamos en condiciones de adjudicarlo.

### I

La recurrente labora en la Autoridad desde el 1979. Comenzó a trabajar en dicha agencia ocupando el puesto de Auditor I, pero actualmente ocupa el de Auditor II. Ocupó interinamente y luego en propiedad, la posición de Directora de la Oficina de Auditoría Interna. En agosto de 1992 aprobó las especificaciones de clase de los puestos de Supervisor de Finanzas, Coordinador de Operaciones de Contraloría y Contralor Auxiliar.

En febrero de 1993 y habiendo ocurrido un cambio de gobierno en Puerto Rico, regresó a su puesto de Auditor II con una hoja de funciones (OP 16) diferente, debido a que se eliminaron las tareas de supervisión y sustitución del Director. Así las cosas, en septiembre de 1995, la Autoridad notificó la apertura de convocatorias para los puestos de Supervisor de Finanzas, Coordinador de Operaciones de Contraloría y Contralor Auxiliar. La recurrente solicitó participar en las tres convocatorias, cumplimentó las solicitudes y acompañó evidencia de su experiencia profesional.

En enero de 1996, la Autoridad le notificó a la recurrente que no había sido considerada para los puestos porque ella no cumplía con los requisitos de experiencia requerida. Inconforme con esta determinación, la recurrente presentó una querella en dos ocasiones, el 2 y el 12 de febrero de 1996, ante el Director Ejecutivo de la Autoridad. Este no las contestó, por lo que el 27 de febrero de 1996 acudió mediante apelación ante la Junta.

En su escrito de apelación alegó, en síntesis, que la Autoridad le había violado sus derechos constitucionales; que como cuestión de hecho y de derecho le correspondía ser considerada en las convocatorias; que las especificaciones de las clases de los puestos se hicieron con el propósito de favorecer ciertos candidatos por razones políticas que favorecía la gerencia y que las mismas tienen unos requisitos que no guardan una base racional con los requisitos que se incluyen en la plaza. Planteó, además, que los requisitos sobre experiencia en supervisión de personal unionado no tenían justificación debido a que la supervisión de los recursos humanos es la misma para gerenciales y unionados; que las funciones de supervisión en los puestos convocados son efectuadas por empleados gerenciales; que la convocatoria para Contralor Auxiliar contravenía el plan de clasificación y que los requisitos establecidos limitan la participación de los candidatos y que se seleccione la persona más idónea y más apta, conforme al principio de mérito.

Luego de varios trámites procesales, la Supervisora de la División de Clasificación y Retribución de la Autoridad preparó un memorando en el cual informó que los cambios en los requisitos mínimos de las clases en controversia se realizaron en consideración a las necesidades presentadas por el Director de Contraloría, el Sr. Harry Márquez Rodríguez. Concluyó que los requisitos mínimos se establecieron conforme a las disposiciones del Reglamento de Personal vigente.

El 23 de abril de 1999, se celebró la vista en su fondo de la apelación. En mayo de 1999 y bajo la firma del presidente de la Junta, Sr. José Roberto Feijoó, y del miembro asociado, Sr. Harry Márquez Rodríguez, la Junta emitió la resolución recurrida, adoptando el Informe del Oficial Examinador, Sr. Manuel J. Camacho Córdova, confirmando la decisión apelada. El Informe contiene Determinaciones de Hechos y de Derecho y concluye que los cambios efectuados a los requisitos mínimos para los puestos convocados no fue una actuación arbitraria, ilegal o irrazonable; que la agencia apelada actuó correctamente; que el testimonio del perito de la parte recurrente no logró derrotar la presunción de corrección de las actuaciones de la agencia y que la recurrente no cumplía con los requisitos de experiencia requeridos para los puestos en controversia.

Oportunamente, la recurrente solicitó su reconsideración, pero ésta no fue acogida por la Junta.

En su recurso ante nos, señala como único error lo siguiente:

*"Emitir su resolución por haberla acordado el miembro asociado Harry Márquez Rodríguez quien tenía conflicto de intereses en el caso y ser su testimonio, actos y órdenes parte de la prueba de hechos del caso y del récord administrativo. Por lo tanto, la decisión no cumple con los requisitos de todo procedimiento administrativo para satisfacer las exigencias del debido procedimiento de ley, a saber, (A) Proceso justo e imparcial y sin prejuicio, (B) Oportunidad de ser oído y que la decisión se base en el récord; y (C) Derecho a examinar de las personas a quienes se le adjudicaron las convocatorias (Expedientes de reclutamiento). También la decisión de la Junta objeto de la apelación resulta arbitraria, ya que un examen de la transcripción que se acompaña y el récord administrativo demuestra que no existe evidencia sustancial que sostengan (sic) los hechos; por el contrario, el expediente administrativo demuestra que las convocatorias GE95-010 de Coordinador de Operaciones de Contraloría, GE95-009 de Contralor Auxiliar y GE95-011 de Supervisor de Finanzas eran nulas."*

Con el beneficio de las posiciones de ambas partes y por los fundamentos que discutiremos a continuación, denegamos el auto solicitado.

## II

Aunque la recurrente señala un sólo error, en realidad formula dos argumentos diferentes que merecen que se

discutan separadamente. Comenzaremos atendiendo lo relativo al reclamo de violación al debido procedimiento de ley.

El debido proceso de ley se manifiesta en dos dimensiones distintas: la sustantiva y la procesal. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562, 578 (1992). En su vertiente sustantiva, persigue proteger y salvaguardar los derechos fundamentales de la persona. Mientras que en su aspecto procesal, le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y del individuo se haga a través de un procedimiento que, en esencia, sea justo, equitativo y que respete la dignidad de los individuos afectados. *Rodríguez Rodríguez v. E.L.A., supra; López Vives v. Policía de Puerto Rico*, 118 D.P.R. 219, 230 (1987). La jurisprudencia ha establecido los requisitos que deben cumplir los procedimientos adversativos de forma cónsona con el debido proceso de ley, en su dimensión procesal. Estos son: *"a) notificación adecuada del proceso; b) proceso ante un juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado; y f) que la decisión se base en el expediente o récord del caso."* *Feliciano Figueroa, et als v. Toste Piñero*, 134 D.P.R. 909, 914-915 (1993); *Rivera Rodríguez v. Stowell Taylor*, 133 D.P.R. 881 (1993). En el ámbito del derecho administrativo, el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal. Aún así, requiere que sea un proceso justo y equitativo que respete la dignidad de los individuos afectados. *López Vives v. Policía de Puerto Rico, supra; López Santos v. Asociación de Taxis de Cayey*, Op. de 16 de diciembre de 1996, **96 J.T.S. 161.**

En *Magriz Rodríguez v. Empresas Nativas, Inc. y otros*, Op. de 12 de mayo de 1997, **97 J.T.S. 55**, interpretando la Sección 3.1 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2151, el Tribunal Supremo señaló lo siguiente:

*"Para garantizar el objetivo de hallar la verdad y hacer justicia a las partes, tanto la Ley de Procedimiento Administrativo Uniforme, (3 L.P.R.A. sec. 2151), como la jurisprudencia, han establecido que al emitirse una resolución la agencia debe salvaguardar el derecho a la concesión de vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita, en su favor, y la presencia de un adjudicador imparcial. La decisión administrativa ha de ser informada con conocimiento y comprensión de la evidencia pertinente al caso. Además, deben efectuarse determinaciones de hechos y consagrar los fundamentos para la decisión administrativa."* [Citas omitidas].

Esos son elementos indispensables del debido proceso de ley en los procedimietnos administrativos y cualquier menoscabo de los mismos invalida los resultados del procedimiento. *Acosta v. Marrieta Serv. Inc.*, Op. de 10 de abril de 1997, **97 J.T.S. 47**.

De esta manera queda establecido que el derecho a una adjudicación imparcial es parte del debido proceso de ley. En otras palabras, las garantías del debido proceso y el valor de la percepción de la justicia son los que con mayor claridad dictan el uso de un adjudicador imparcial en los procedimientos adjudicativos ante el foro administrativo. La necesidad de imparcialidad adjudicativa en la infraestructura del debido proceso, impide al adjudicador decidir en un caso si tiene interés o prejuicio real identificable o cuando las circunstancias son tales que el riesgo de parcialidad es demasiado grande. *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194, 202 (1987).

Sobre el prejuicio y la parcialidad, expresa el Profesor Demetrio Fernández que debe eliminarse *"toda apariencia y realidad de que hay prejuicio o parcialidad a favor de la agencia en el proceso de adjudicación."* D. Fernández, *Derecho Administrativo*, 1993, Ed. Forum, págs. 205-206. Sobre el mismo asunto añade:

*"Poco valor y significado tendrá el derecho a una audiencia en los procedimientos de adjudicación si el juzgador tiene unas motivaciones personales en contra de uno de los litigantes o tiene un ánimo prevenido sobre los hechos sin aún examinar la evidencia. Tal y como se ha señalado, la Ley requiere una decisión imparcial, lo que también presupone que el juzgador lo sea."*

El prejuicio que puede tener un juzgador y que lo convierte en un adjudicador parcializado, pueden compararse con las situaciones en las cuales se descalifica o inhibe un juez. ■ Entre las situaciones que expone la Regla 63.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap III, ■ se encuentran estar interesado en el resultado del caso y cualquier otra que *"pueda razonablemente arrojar dudas sobre su imparcialidad."* El prejuicio ideológico, definido como la predilección personal del juzgador que lo inclina a favorecer una decisión, es una de las causas más comunes de descalificación. ■

No obstante, existen situaciones donde aplica la regla de necesidad. Esta se refiere a circunstancias en las cuales, aunque existe prejuicio, no se puede descalificar al juzgador porque el efecto sería que no se podría llevar a cabo el proceso y continuaría la conducta contraria a lo reglamentado. ■ Esta norma se justifica tomando en consideración que el perjudicado tiene, en la vista, derecho a presentar evidencia a su favor y contrainterrogar los testigos contrarios. Además, existe un derecho a que la decisión de las agencias sea revisada por el foro apelativo.

En la jurisdicción federal se ha reconocido la regla de necesidad en casos donde un juez ha decidido controversias en los cuales tiene interés, si el caso no se puede ventilar de otra manera (*"the case cannot be heard otherwise"*). *United States v. Will*, 449 U.S. 200 (1980); *Switzer v. Berry*, 198 F. 3d 1255 (10th Cir., 2000).

En la esfera administrativa también se ha determinado que, por haber realizado una investigación y tener contacto previo con el asunto cuestionado, una comisión no está descalificada para adjudicar una controversia ante sí. Ello se ha justificado cuando los querellantes tuvieron oportunidad de presentar evidencia y contrainterrogar testigos durante las vistas, ya que de permitirse la descalificación de la agencia, no se hubiese podido resolver la querella por la comisión o cualquier otra agencia. Véase, *F.T.C. v. Cement Institute*, 333 U.S. 683 (1948).

En armonía con lo antes expuesto, la prueba para adjudicar si un juzgador en un proceso adjudicativo debe ser descalificado por razón de prejuicio o conocimiento previo, es determinar si un observador desinteresado puede concluir que el juzgador que toma la decisión ha adjudicado en alguna medida los hechos y el derecho de un caso específico antes de escucharlo. *Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583 (1970).

### III

En la causa ante nos, uno de los miembros de la Junta, el Sr. Harry Márquez, se había abstenido de participar en la adjudicación de la apelación, pues fue el Director del Departamento para el cual laboraba la recurrente y quien, a su vez, recomendó los cambios que se le hicieron a los puestos para los cuales la recurrente no fue escogida e impugnó en la apelación. Otro de los miembros de la Junta, el Lcdo. Claudio Rojas, solicitó enmiendas al Informe del Oficial Examinador y luego decidió no adoptarlo. Esta situación fue la que hizo necesaria y obligatoria la intervención del señor Márquez. Conforme a la regla de necesidad, la partipación de éste se justificó, ya que era la única forma en que se podía constituir el *quórum* para emitir la decisión de la Junta. Si este miembro de la Junta no participaba, no se adjudicaba la apelación y la controversia se hubiera mantenido viva.

Con relación a este asunto, el Reglamento de la Junta dispone, que cuando ésta ventile casos, excepto de destitución o despidos, el *quórum* lo constituirán dos miembros y la inhibición de uno de sus miembros podrá ordenarse, previa solicitud de parte, si dicho miembro ha tomado parte activa en la acción que ha dado margen a la apelación o cuando la Junta determine que existe motivo por el cual el miembro podrá emitir un juicio justo e imparcial, entre otras razones. ■ Dispone, además, que en cuanto a las situaciones que pudieran surgir y que no hayan sido ·atendidas por el Reglamento, éstas se resolverán conforme a la práctica administrativa usual, la intención legislativa, la política pública vigente y los principios de equidad. ■

Ciertamente, el señor Márquez conocía los hechos que provocaron la presente acción y puede presumirse que tenía un razonable interés en el resultado de la misma, ya que él fue quien, de acuerdo a las necesidades identificadas en la División de Contraloría que él dirigía, recomendó que se realizaran los cambios a los requisitos que debían cumplir las personas que fueran seleccionadas para ocupar los puestos que interesaba la recurrente. Es

indudable que esta situación razonablemente arrojaba dudas sobre la imparcialidad de uno de los adjudicadores. Por eso, éste se abstuvo, inicialmente, de participar en la adjudicación de la causa de la recurrente.

No obstante, ante la situación creada por la decisión del Lcdo. Rojas, su participación se justificaba, aunque existe el riesgo de parcialidad. Al no adoptar el tercer miembro de la Junta el Informe del Oficial Examinador, sólo quedaba el presidente de ésta para tomar la determinación de la agencia, lo que no constituia *quórum* conforme al Reglamento. La obligada participación del señor Márquez era la única forma en que la apelación instada por la recurrente podía ser resuelta. De otra manera, nunca se hubiese dispuesto de la misma.

Por su valor persuasivo y pertinencia, de rigor es señalar que este método excepcional propiciado por la regla de necesidad fue adoptado en el Reglamento de la Junta de Apelaciones del Sistema de Administración de Personal. En éste se dispuso que, aunque exista causa para la inhibición de un miembro de la Junta, este podrá participar, si es necesario, para lograr el *quórum* indispensable para una determinación. ■

Finalmente, pero no por ello menos importante, debe considerarse que la evaluación de la prueba presentada en la vista celebrada la realizó un Oficial Examinador y no la Junta. Fue el Oficial Examinador el que ponderó los testimonios y la prueba documental presentada, y su imparcialidad nunca fue impugnada por la recurrente. La intervención del Sr. Márquez, que cuestiona la recurrente, se limitó a pasar juicio sobre el informe rendido y a adoptarlo. Es decir, el Sr. Márquez no presidió la vista evidenciaria en la que la recurrente presentó evidencia y contrainterrogó la ofrecida por la Autoridad. Ello así, el impacto que pudo haber tenido sobre la decisión recurrida el conocimiento previo que poseía el Sr. Márquez sobre la controversia, fue mínimo, si alguno. Más aún, dadas las escepcionales circunstancias que representa la intervención del Sr. Márquez, hemos sido sumamente rigurosos al evaluar la prueba y su evaluación por la Junta en el descargo de nuestra función revisora y hemos quedado satisfecho de que la decisión no responde a prejuicio alguno. Es decir, a pesar de que estimamos que en este caso la regla de necesidad permitía la intervención del Sr. Márquez, hemos tenido el cuidado adicional de escudriñar la decisión en búsqueda de signos de imparcialidad y no los hemos detectado.

**IV**

La Ley Núm. 170 de 12 de agosto de 1988, mejor conocida como la Ley de Procedimiento Administrativo Uniforme, (*"L.P.A.U."*), dispone que las determinaciones de hechos de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo, mientras que las conclusiones de derecho serán revisables en todos sus aspectos. Veanse, 3 L.P.R.A. sec. 2175; *Municipio de San Juan v. Junta de Calidad Ambiental*, Op. de 14 de diciembre de 2000, **2000 J.T.S. 193**; *Rivera Concepción v. A. R.P.E.*, Op. de 29 de septiembre de 2000, **2000 J.T.S. 155**; *Misión Industrial v. Junta de Calidad Ambienlal*, res. el 29 de junio de 1998, **98 J.T.S. 77**; *Rivera Rentas v. A&C Development Corp.*, res. el 26 de noviembre de 1997, **97 J.T.S. 143**; *Fac. Ciencias Sociales v. C.E.S.*, 133 D.P.R. 521 (1993).

Es principio reconocido que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, y que la revisión judicial de éstas se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. *Fuertes v. ARPE*, 134 D.P.R. 947 (1993); *Murphy Bernabé v. Tribunal Superior, supra.*

En otras palabras, la revisión judicial de decisiones administrativas requiere deferencia a las determinaciones de las agencias que, con más conocimiento y experiencia, pueden pronunciarse mejor sobre sus respectivas áreas. *Misión Industrial v. Junta*, Op. del 21 de marzo de 1997, **97 J.T.S. 34**; *Ríos Colón v. F.S.E.*, 139 D.P.R. 167 (1995); *Com. Electoral P.I.P. v. C.E.E.*, 119 D.P.R. 48 (1995); *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567 (1993); *Viaje Gallardo v. Homero Clavell*, 131 D.P.R 275 (1992); *Colón Ventura v. Méndez*, 130 D.P.R. 433 (1992); y *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). Pero, aun esta deferencia judicial, el *"expertise"* administrativo cede ante una actuación irrazonable o ilegal. *T-JAC v. Caguas Centrum Limited*, res. el 12 de abril de 1999, **99 J.T.S. 60**.

Examinados el recurso ante nos, los autos del caso y la transcripción de la vista, a la luz de la normativa expuesta, concluimos que no fue arbitraria, irrazonable o ilegal la determinación tomada por el oficial examinador que fuera adoptada por la mayoría de la Junta. La recurrente no ha demostrado que la evidencia utilizada por la Junta no sea sustancial y que no avale los hechos determinados o la decisión recurrida.

El análisis de los documentos incluidos en el apéndice, la transcripción de la vista ante el oficial examinador y los autos, revela que la recurrente no poseía la experiencia de supervisión necesaria para que se le certificara como elegible para competir por los puestos a los que se nombraron las personas que la recurrente impugna.

Las plazas a las que aspiraba ésta requerían de experiencia sustancial en la supervisión de personal, tanto gerencial como unionado. La de Contralor Auxiliar requería ocho (8) años de experiencia en supervisión de personal; la de Coordinador de Operaciones de Contraloría requería seis (6) años de experiencia progresiva en el ciclo de contabilidad, dos (2) de los cuales tenían que incluir la supervisión de personal y, finalmente, la de Supervisor de Finanzas requería cinco (5) años de experiencia progresiva y de supervisión de personal.

La prueba presentada avala la conclusión de la Junta de que la recurrente incumplía con estos requisitos, por lo que era razonable y justificado que no se le certificara como elegible para competir por estas plazas. Tal decisión se justificaba, aunque a la recurrente se le acreditaron 2.3 años de experiencia en la supervisión de personal gerencial, pues carecía de experiencia en la supervisión de personal unionado, requisito que la Autoridad estimó de importancia. Veamos.

Las convocatorias armonizaban con el Plan de Clasificación y Lotificación vigente. La Convocatoria GE-95-009, requería ocho (8) años de experiencia, igual que la especificación de clase correspondiente, según enmendada. Las convocatorias GE-95-010 y 95-011 disponían que los candidatos debían poseer experiencia supervisando personal. Este requisito no era arbitrario.

Las plazas requerían que el seleccionado atendiera y dilucidara controversias obrero-patronales, en primera instancia, a la luz de lo dispuesto para los convenios colectivos. Este requisito es razonable, ya que el procedimiento de quejas y agravios del convenio disponía que el supervisor contestara inicialmente las querellas que presentara la Unión de la Autoridad. Ello tornaba esencial el que los aspirantes a las posiciones poseyeran la experiencia en supervisión de personal unionado.

La Recurrente no ha negado esto. Tanto ella como su perito admitieron durante la vista en su fondo que la primera no poseía este conocimiento, pues no había supervisado personal unionado y a que los empleados gerenciales no se rigen por convenio alguno. Solamente opinó que la supervisión era igual.

Coincidimos con la Autoridad en cuanto a que el testimonio del perito de la recurrente no controvirtió de forma alguna las acciones de la Autoridad y que éste admitió que no había revisado el expediente de las convocatorias en controversia. Compartimos, también, la posición de la Autoridad en cuanto a que el récord demuestra que las enmiendas a las especificaciones de clase para las plazas convocadas estaban claramente fundamentadas en la reorganización de la Oficina de Contraloría y en los esfuerzos de mecanización y optimización de los procedimiento de esa oficina.

Toda vez que se presume la corrección y legitimidad de las transacciones de personal efectuadas por la autoridad nominadora, a menos que se presente prueba fehaciente y sustancial en contrario, *P.R.T.C. v. Unión Indep. Emp. Telefónicos*, 131 D.P.R. 171 (1992), y que la recurrente no ofreció prueba creíble que rebatiera esa presunción, concluimos que la decisión de la Autoridad no debe, ni tiene porqué ser alterada.

## V

Por los fundamentos antes expuestos, denegamos la expedición del auto solicitado.

379

Lo acordó el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 151

1. Véase D. Fernández, *ante*, a las págs. 206-207; Regla 62 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

2. Esta Regla dispone que:

*"A iniciativa propia, o a recusación de parte, un juez deberá inhibirse de actuar en un pleito o procedimiento en cualquiera de los casos siguientes: (a) Por estar interesado en su resultado o tener prejuicio o parcialidad personal hacia cualquiera de las partes o sus abogados; (b) Por existir parentesco de consanguinidad o afinidad con cualquiera de las partes o de sus abogados dentro del cuarto grado; (c) Por haber sido abogado o consejero de cualquiera de las partes o sus abogados en el pleito pendiente ante él, o fiscal en una investigación o proceso criminal donde los hechos fueren los mismos que habrían de ser sometidos a su resolución; (d) Por existir una relación de amistad de tal naturaleza entre el juez y cualquiera de las partes o sus abogados que pueda frustrar los fines de la justicia; (e) Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a mirar la confianza pública en el sistema de justicia."* 32 L.P.R.A. Ap. III, R. 63.

3. D. Fernández, *ante*.

4. D. Fernández, ante, a las págs. 207-208.

5. Artículos 12.1, 12.1A y 11.2 del Reglamento de la Junta de Apelaciones de la Autoridad de Edificios Públicos del 16 de septiembre de 1994.

6. Artículo 11.7 del Reglamento de la Junta de Apelaciones de la Autoridad de Edificios Publicos del 16 de septiembre de 1994.

7. Artículo 3.3 del Reglamento de la Junta de Apelaciones del Sistema de Administración de Personal de 30 de enero de 1996.